ALBERT E. DeWAAL, APPELLEE, v. LOIE M. DeWAAL,
APPELLANT.

29 N. W. 2d 371

Filed October 24, 1947.    No. 32251.

*Henry Pedersen* and *John A. McKenzie,* for appellant.

*Brown, Crossman, West, Barton & Quinlan,* for
appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE,
YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN,
District Judge.

PAINE, J.

An absolute decree of divorce was granted the hus-
band on the ground of extreme cruelty. The cross-
petition of the wife for separate maintenance was dis-
missed, from all of which she appealed.

The plaintiff in his amended petition alleged that the
parties were married May 12, 1917, in Omaha, and
have been residents of Omaha continuously since that
date. He charged that the defendant, without cause
or provocation, has been guilty of extreme cruelty, which
has destroyed the legitimate objects of matrimony; that
she has been quarrelsome, has scolded and harrassed the

plaintiff in the family home, and without cause has charged him with wrongful association with other women. He charged that she has assumed and exercised authority over his earnings and of the family finances, and has attempted to limit him to such actual necessities as she arbitrarily determined.

The plaintiff alleged that two sons are the issue of said marriage, Roland A., aged 27, who is married and living in San Francisco, and Wallace E., aged 21, who is self-supporting and resides in the home of the parties; that their home is subject to a mortgage of approximately $1,300; that the defendant is the owner of a 1939 Chevrolet two-door sedan, acquired from the proceeds of an inheritance she received; and the plaintiff asked for an absolute divorce.

For her answer and cross-petition, defendant denied that she has been guilty of any of the acts of extreme cruelty charged in the amended petition, and alleged that she has administered to plaintiff in sickness, molded her life to his wishes, and at all times has done the things in her family life which met with his approval and desires; denied that she has ever assumed any authority over the family earnings, and alleged that she has never questioned his right to handle the money and pay the bills out of his earnings, except such bills as he had requested her to pay from money he had voluntarily turned over to her.

The defendant for her cross-petition alleged that during their 29 years of married life she has always conducted herself as a faithful, loving, and obedient wife, and that although the plaintiff is a strong-minded, domineering individual, she has always had the greatest love and respect for him.

The defendant alleged that she has had three major operations, the last one on June 5, 1945; that since said operation plaintiff has repeatedly told the defendant that she is no good any more, and that he wished to be rid of her; that he has ridiculed her; that he changed

his personal habits, and has become addicted to the use of cigarettes; that he is no longer interested in their home, has begun going to motion picture theaters, and reads sensational magazines; that he shows an interest in young women whom he has met in the course of his business or elsewhere, and carried on an animated conversation over the telephone with a young woman; and that he has become morose, sullen, and quarrelsome, refused to eat the food she prepared for him, and flies into rages without any cause. She further charged that she is in poor health, has no means to support herself, has no professional skill, and needs constant medical attention.

The defendant alleged that the plaintiff has been employed by Swift & Company for 30 years, earns at least $80 a week, and is entitled to certain pension rights which will accrue to him when he is 65; that he has $12,000 worth of life insurance, a bank account, war savings bonds; that during the summer of 1945 she first learned that the plaintiff was afflicted with diabetes, and she cooked special food for him and was sympathetic in his ailment; and that upon his return from ten days in the hospital, where he was treated for diabetes, he moved out of the home and has never returned. Wherefore, defendant prayed that she may be given a decree of separate maintenance and remain in the home, and be given such other relief as may be just and equitable.

The plaintiff, for a reply and answer thereto, denied many allegations therein; admitted that he smokes cigarettes and has moved from the family home and refuses to return; admitted that he holds said life insurance, and has approximately $1,000 maturity value of war savings bonds, and prayed that the defendant's cross-petition be dismissed and that the prayer of his petition be granted.

The trial of the case began on July 1, 1946, and was continued from time to time, as witnesses were

available, until December 11, and the evidence, as found in the bill of exceptions of nearly 600 pages, discloses the proof submitted by each of the parties in support of the allegations of their pleadings.

The trial court found the value of the property to be as follows: A 1939 Chevrolet sedan, owned by defendant, of the value of $750. The approximate value of all the household goods and personal property was fixed at $1,000, and the plaintiff was given out of this certain tools and movie equipment, a radio, etc., desired by him, of the value of $308. The present redemption value of war savings bonds held by the parties was $766.75. The face value of plaintiff's life insurance was $13,800, all payable to defendant as beneficiary, but its cash surrender value was but $991.87, subject to policy loans of $222.02, its net value being $769.85. A cemetery lot was of the fair value of $300. The value of the home, held in joint tenancy, was $8,500, subject to a mortgage of $1,246.08, less taxes due of $37.54, leaving its net value, $7,216.38, which property, except automobile and certain household goods, was given plaintiff.

The defendant was given the Chevrolet and household goods of the value of $692, and alimony of $6,500, payable at the rate of $60 a month, beginning December 1, 1946, such monthly payments to cease on the prior death of defendant, and if plaintiff should die before all payments have been made the maximum amount that his estate should be liable for should be $5,039.74, with a credit thereon of all payments theretofore made. The right was reserved to plaintiff at his option to pay off the balance of remaining payments at any time.

The defendant was given the right to occupy the home property for six months from December 1, 1946, and while she is occupying the home the plaintiff should be given a credit of $45 a month against the payment of $60 required of him, but he was required, in addition, to keep up payments of taxes and insurance on

said property. The decree provided that neither party should have any further right, title, claim, present or future, to earnings or property of the other. The court further found that plaintiff had paid all temporary allowances made to the defendant.

To summarize, it will thus be seen that the defendant was given a Chevrolet car, valued at $750, household goods to the value of $692, and alimony payments of $6,500, or a total of $7,942, together with an additional attorney's fee in the amount of $100.

The plaintiff was given household goods of $308, war savings bonds, $766.75, cash value of life insurance, $769.85, cemetery lot, $300, and the home, of the net value of $7,216.38, all amounting to $9,360.98. All costs in the district court were charged to plaintiff and appellee.

The defendant and appellant assigned as error the holding of the court that the evidence showed that defendant had been guilty of extreme cruelty towards plaintiff in charging that plaintiff had wrongfully associated with other women; further, it erred in holding that she was guilty of extreme cruelty in that she had exercised too much authority over the earnings of the parties; that the court erred in the division of the property between the parties, and in allowing the plaintiff to share in the bequest that the mother of defendant made to her, and in failing to provide for her support and maintenance until such time as she will be able to rehabilitate herself; and lastly, that the court erred in not granting a decree of separate maintenance to defendant.

In considering these assignments of error, the first is in the court finding it to be extreme cruelty for the wife to continually nag him about his conduct toward women in general. He testified that she objected to his associating with or talking with any women in the plant or office of Swift & Company, where he worked; that she objected to riding through parks on Sundays where

he would see girls riding bicycles in shorts; objected to his listening to women singers on the radio, such as "The Hour of Charm;" objected to his having kissed their new daughter-in-law at the wedding ceremony in California; objected to his going to the first aid station in the plant to have a cut finger attended to, charging that he went there just to see the nurses. She objected to his passing the time of day with the neighbor next door when she came out in slacks while he was working in their yard. He said he belonged to the Ak-Sar-Ben when it was a stag affair, but as soon as women joined he quit on his wife's request, and for years, they did not attend moving picture shows, on her objection.

The trial judge heard the testimony of these parties at great length, and, in addition, the court asked each of them questions. The decree shows that he accepted the testimony of the plaintiff rather than that of the defendant, which fact cannot be overlooked by this court.

It would serve no useful purpose to set out in further detail the conflicting evidence given by the parties to this suit as to their many bitter controversies over simple events of home life, with which the bill of exceptions is replete.

"In suit for divorce, husband's conduct in continuing to live with wife while she persisted in acts of nagging was not a 'condonation' thereof." Alford v. Alford, 7 S. E. 2d 278, (189 Ga. 630).

From the recent case of Morris v. Morris, 43 S. E. 2d (Ga.) 639, we take the following quotation as pertinent to the facts in the case at bar: " 'From the days of Socrates and Xantippe, men and women have known what is meant by nagging, although philology can not define it or legal chemistry resolve it into its elements. Humor can not soften or wit divert it. Prayers avail nothing, and threats are idle. Soft words but increase its velocity, and harsh ones its violence.' " And, again: " 'One or two petty fault findings may be to a degree

annoying, but it is the persistency of the fretting that causes the real vexation. It is the accumulation of the instances, the never-ending borings, the sum total of the repeated irritations; no one smarting, but the continued scraping of the surface already made raw and sore and inflamed by the previous annoying and provoking conduct. One briar prick, while not a pleasant sensation, may cause no serious pain, but a thousand of them may be harrassing.' " The opinion continues: "One or even several drops of water falling on the surface of a block of granite will make no perceptible change, but a constant dripping over a period of many years will mark its effect."

Although no violence is threatened, yet harping and nagging, continued for years by either a husband or wife, concerning conduct above reproach, may be so unreasonable as to utterly destroy the peace of mind, seriously impair health, and ruin all legitimate ends and objects of matrimony, and constitute extreme cruelty "by other means," as defined in section 42-302, R. S. 1943. See Brown v. Brown, 130 Neb. 487, 265 N. W. 556; Faris v. Faris, 107 Neb. 214, 185 N. W. 347; Oertle v. Oertle, 146 Neb. 746, 21 N. W. 2d 447; Hartshorn v. Hartshorn, 104 Neb. 561, 178 N. W. 186.

One of the assignments of error is that the trial court should have granted a decree of separate maintenance to the wife. In Yost v. Yost, 143 Neb. 80, 8 N. W. 2d 686, the wife was given such a decree, but in the case at bar the evidence not only fails to show her entitled to such a decree, but warranted the court in granting an absolute decree of divorce to plaintiff. See Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22; Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148.

"The trial court is vested with sound discretion in determining whether a divorce from bed and board, or an absolute divorce, shall be granted, and in a majority of the cases an absolute divorce is to be preferred." Wetenkamp v. Wetenkamp, 140 Neb. 392, 299 N. W. 491.

The only other assignment of error we will discuss is the one which charges that the court erred in the division of the property. It is rather unusual to find a case in which the parties agree generally as to the net value of nearly all of the property holdings. The wife is granted alimony of $6,500, payable at the rate of $60 a month, thus requiring a little over nine years to complete the payments, but in case of the prior death of the wife, payment of installments not due shall terminate, and in case of the prior death of the husband then his estate shall be liable for a maximum sum of $5,039.74 as alimony.

In the defendant's brief, objections are made to the allowance of alimony, and we are asked to give her an undivided half interest in the home and the right to occupy it as long as she lives, together with $75 a month for five years, and a cash sum of $3,300 which she received from an estate, and additional amounts.

Considering the expense of keeping up taxes, insurance, interest and payments on the mortgage on the home, we believe the award of the home to the plaintiff was proper. This court finds that the grant of alimony to defendant of $6,500, payable in monthly payments over the years, is fair and equitable to the defendant, and warranted by the evidence.

Formerly alimony was considered an allowance for the support of the wife, and payments thereof terminated at her death. But the better view is that, when a definite sum is awarded, it is considered as a division of the property. See Annotation, L. R. A. 1916B, p. 854.

This court has taken the position that the trial court should be free to fix the amount of the alimony and how it should be paid. The decree may provide that upon the death of the wife, payment of installments not yet due may be terminated and that upon death of the husband his estate may be held liable for a less amount, as in the case at bar; it being understood that any monthly payments of alimony which might be in de-

fault on the date of the death of the wife must be paid in full. See Metschke v. Metschke, 146 Neb. 461, 20 N. W. 2d 238; Martin v. Martin, 145 Neb. 655, 17 N. W. 2d 625; Dunlap v. Dunlap, 145 Neb. 735, 18 N. W. 2d 51; Haussener v. Haussener, 147 Neb. 489, 23 N. W. 2d 700; Munsell v. Munsell, 147 Neb. 590, 24 N. W. 2d 566; Green v. Green, *ante* p. 19, 26 N. W. 2d 299.

The plaintiff insists that the appeal in this case was frivolous, that no additional attorney's fees should be allowed in this court, and that all costs of appeal already paid by plaintiff should be credited against the monthly payments of alimony. The record shows that this court allowed $30 for the cost of defendant's briefs, and only the actual cost of the bill of exceptions.

The decree of the trial court is affirmed, with an attorney's fee of $100 allowed to defendant for services in this court.

AFFIRMED.