ELLA L. ROBINSON, APPELLEE, V. GEORGE L. ROBINSON,
APPELLANT.

82 N. W. 2d 550

Filed April 19, 1957.    No. 34124.

*George B. Boland* and *A. J. Walen,* for appellant.

*Burbridge & Burbridge,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff, Ella L. Robinson, filed this suit for an
absolute divorce against the defendant, George L. Rob-
inson, on the ground of extreme cruelty.  The defendant
denied plaintiff's charge of misconduct and prayed for
a dismissal of her petition.  The trial court denied the
plaintiff an absolute divorce and granted her a decree
of separate maintenance.  The defendant has appealed.

The parties were married on October 6, 1932.  Plain-
tiff is 56 years of age and had two sons by a previous
marriage.  Defendant is 60 years of age and had three
children by a previous marriage.  No children were
born to the parties to this suit.  The children of the plain-
tiff lived in the home most of the time until they be-
came self-supporting.  The children of the defendant
lived with their mother and were never in the home of
these parties.  The evidence is clear that the children of
the parties were never a cause of dissension and were
not a contributing factor to the divorce proceeding.  The

record shows that the parents of the plaintiff lived with the parties during the winter for 12 years or more and since 1953 have lived with them permanently. The evidence is undisputed that defendant had a very high regard for plaintiff's parents and approved of their living in the home. The care and support of plaintiff's parents in the home in no manner contributed to the marital difficulties of the parties.

At the time of the marriage defendant had approximately $8,500 and two automobiles. After spending the first years after the marriage as a traveling salesman, defendant embarked in the construction business. In 1941 he went through bankruptcy when he owed about $4,000. Subsequent to receiving his discharge in bankruptcy he paid off this indebtedness. Commencing in 1947 defendant began to accumulate considerable property. He engaged in the manufacture of metal corner bead for dry wall construction and metal trim for doors and windows. The business became very profitable. He had also become engaged in the construction and sale of residence properties. While there is great conflict in the evidence as to his net worth at the time the divorce was commenced, the record indicates that it was at least $200,000. In view of the result at which we arrive, we shall not determine the extent of his holdings with any degree of certainty.

As grounds for a divorce the plaintiff alleges that on August 25, 1955, defendant threatened her life, that he became moody and used vile and profane language toward the plaintiff and guests visiting in the home, and that he would absent himself from the home without explanation. She asserts that this caused her to become nervous and in ill health, and that his acts have completely destroyed the objects of matrimony. The defendant denies any misconduct on his part. The record does show that plaintiff lost weight and became nervous. The evidence fails completely to corroborate her statements as to any misconduct on the part of the defendant

and the trial court was in all respects correct in denying her an absolute divorce.

The defendant asserts that the evidence is insufficient to support a decree for separate maintenance, attorney's fees, and costs. The determination of this issue requires a further consideration of the evidence.

The plaintiff contends that defendant once threatened her life. The defendant denies it. The circumstances were as follows: Plaintiff says that defendant was driving her to a garage to get her automobile which was there for repairs. She says he started to condemn her daughter-in-law and she told him to talk about his daughter-in-law and not hers. She states that he swore and said: "Some of these days I am going to kill you." The defendant says that he complained to the plaintiff about her daughter-in-law turning her three little boys against him and "that is going to kill me." Plaintiff asked why he did not bring up his own daughter-in-law. At that time they arrived at the garage and defendant said: "You had better get out right now." There is no corroboration of this incident in the record.

Plaintiff complains about the defendant going to California in January 1956 and refusing to take her with him. He says he offered to take her if she would get a suitable person to care for her parents. She wanted her brother to come into the home for this purpose. Defendant refused to permit this, but was agreeable to employing a practical nurse. Plaintiff refused to do this, and defendant stated she would have to remain and do it herself. The evidence shows that defendant left more than $1,000 in the bank subject to her check when he left. She drew out this money and used some of it for a plane trip to Arizona to visit her son. Upon her return she filed this suit for a divorce.

The plaintiff complains that defendant took $50,500 with him on his trip to California without informing her. The defendant states that he expected to set up another manufacturing plant or establish two ware-

houses on the west coast to further his business interests. He testifies that although he had an established credit, a substantial bank account permitted him to operate more expeditiously. Upon his return he immediately told the plaintiff where the money was deposited and offered to show her his bank book. It is true that he did not tell her his intentions before he left. Plaintiff appears to have the notion that the removal of this money out of the jurisdiction was a violation of his marital obligations. There is no merit to this contention. She complains also that defendant did not communicate with her during this 5-week trip. The evidence shows the defendant did communicate with his office in Omaha and requested plaintiff's son to advise his mother where he was. The evidence shows that plaintiff made no effort to communicate with defendant, even though she knew where he was. This seems to fit the pattern that they had previously followed over the years. We find nothing in this evidence that sustains plaintiff's allegations of extreme cruelty.

The evidence shows for the first 23 years of their married life these parties got along exceptionally well. Plaintiff worked as a beauty shop operator when times were hard. Defendant praises her as a housekeeper and cook. Plaintiff kept house without help and appears to have been frugal in her handling of money. The defendant built a new home costing in excess of $50,000, which they occupied in 1954. He furnished it with the best of furniture and household equipment. He bought plaintiff a new automobile costing in excess of $3,500 within a year previous to the commencement of their marital troubles. He bought her presents on her birthdays and at Christmas time. He treated her children the same as his own. He helped her children with gifts and loans, the same as his own. He carried most of his real estate in joint tenancy with the plaintiff, at her insistence. She always had an adequate checking account. The defendant contends that plaintiff lost her

affection for him and became cool toward his advances and efforts at a reconciliation of their marital troubles. The plaintiff contends that it was the defendant who brought about their apparent differences. There is no evidence corroborating the statements of either. It is evident, however, that it is the plaintiff and not the defendant who wants a divorce and a division of the property. The most favorable view of the evidence reveals little, if any, corroboration of the misconduct attributed to the defendant. The decree for separate maintenance is not supported by the evidence.

It is clear from the evidence in this record that these parties lived together for 23 years or more as a happy and contented married couple. The most that either testify to is that a coolness developed between them. The evidence of neighbors and friends, considered in its most favorable light, is that they did not appear to talk to each other as much as formerly and that a tension appeared to exist; some of whom testify that they realize it only in retrospect. A dissolution of a marriage by divorce or separate maintenance cannot be sustained on such flimsy grounds. A marriage contract is one having a great public interest and it cannot be dissolved except when all conditions of controlling statutes are met. The parties to a marriage assume duties and obligations of a most solemn character. They may not be put aside at the will of the parties as in an ordinary partnership. A divorce or legal separation must be grounded on a legal fault within the grounds enumerated in the statutes and proved in the manner therein provided. One party may not create the grounds that will sustain him or her in maintaining such a suit. It is not the province of the courts to grant such decrees for sociological reasons. The policy of the state relative to marriage is fixed by the Legislature. It is not for this court to do what it deems best for the parties, The only relief that may be granted is that provided

by statute when the evidence is sufficient to bring the case within its purview.

The evidence in this record does not show a semblance of a cause of action for divorce or separate maintenance. It would be manifestly unjust to require the husband in such a situation to divide his property, jeopardize his business, and destroy his source of income on such trivial grounds. One party to a marriage is not required to suffer detriment because the other, through whimsy, fancied wrongs, or petty grievances, elects to violate the marital obligation. The evidence shows the marriage to have been a happy one during the periods that the parties were suffering economic reverses. When defendant's business became successful and the parties began to accumulate property and money in substantial amounts, the demands of the wife became progressively greater. The defendant appears to have complied with her wishes in taking real estate in joint tenancy and in maintaining joint bank accounts to the extent possible. Now she wants half of the property and a termination of the marriage relation, when legal fault on the part of the husband was not shown. So long as the defendant fulfills his marital obligations, she is not entitled to any such relief. The following cases support this conclusion: Brown v. Brown, 130 Neb. 487, 265 N. W. 556; Peterson v. Peterson, 153 Neb. 727, 46 N. W. 2d 126; Schwarting v. Schwarting, 158 Neb. 99, 62 N. W. 2d 315; Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321.

For the reasons stated, the judgment of the district court awarding separate maintenance, attorney's fees, and costs, is reversed and the cause remanded with directions to dismiss the case and tax the costs to the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.