ELEANOR C. SHOMAKER, APPELLEE, V. WILLIAM LAWRENCE SHOMAKER, APPELLANT.

88 N. W. 2d 221

Filed February 28, 1958. No. 34305.

*Fitzgerald, Hamer, Brown & Leahy* and *Marti, O'Gara, Dalton & Sheldon,* for appellant.

*Hotz & Hotz,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Eleanor C. Shomaker, brought this action against defendant, William Lawrence Shomaker, alleging extreme cruelty and seeking a divorce from bed and board, custody and control of their three minor sons, support allowances together with a fair disposition of the assets and liabilities of the parties, and such additional relief as the court deemed just. Defendant, by answer and cross-petition, denied generally and, alleging extreme cruelty by plaintiff, sought an absolute divorce and dismissal of plaintiff's petition. He also sought to have the court determine custody and control of their children and award a reasonable allowance for their support if they remained with plaintiff, together with a reasonable amount of alimony to plaintiff, a reasonable allowance of attorneys' fees for her attorneys, and the granting of such additional equitable relief as might be necessary.

After a trial on the merits during all or parts of February 6, 7, 8, 14, 15, and 26, 1957, the cause was taken under advisement. Subsequently, a judgment was rendered which granted plaintiff a divorce from bed and board; awarded her the custody and control of their three minor sons then 17, 16, and 9 years of age, with right of reasonable visitation by defendant; determined and ordered allowances to be paid by defendant for the support, maintenance, and education of their children and the support of plaintiff; fixed and disposed of the assets and liabilities of the parties; and dismissed defendant's cross-petition. All costs were taxed to defendant, including an allowance of attorneys' fees for plaintiff's attorneys, together with claimed necessary expenses of investigation and carrying on the litigation.

Thereafter, defendant's motion for new trial was overruled and he appealed, assigning substantially that the trial court erred as follows: (1) In dismissing defendant's cross-petition and refusing to grant him an absolute divorce; (2) in granting plaintiff a divorce from bed and board; and (3) in awarding plaintiff an excessive and disproportionate amount of the property accumulated during the marriage, and allowing excessive attorneys' fees for plaintiff's attorneys, together with excessive expenses for investigation and carrying on the litigation. We conclude that the assignments have no merit, except for the allowance of such expenses.

Preliminary to a discussion and disposition of the assignments, we point out certain rules of law which are applicable and controlling. In that connection, it has long since become elementary that such cases are triable de novo upon appeal to this court and that any unjustifiable conduct by either the husband or wife which destroys the legitimate ends and objects of matrimony constitutes "extreme cruelty" as defined in section 42-302, R. R. S. 1943.

In Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368, this court held: "A decree of divorce cannot be

granted solely on the declarations, confessions, or admissions of the parties. There must be corroborative evidence of the facts necessary to be established as required by section 42-335, R. R. S. 1943.

"It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances.

"In a divorce suit, where the court has jurisdiction of the parties, it has power to adjust all their respective property interests.

"The division of property and allowance of alimony in divorce actions are always to be determined by the facts in each case."

Such opinion also set forth the elements which should generally be considered in making a division of property and allowing alimony and support money in divorce cases. See, also, Spencer v. Spencer, 158 Neb. 629, 64 N. W. 2d 348; Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173.

This court has concluded that a divorce from bed and board is in the nature of a conditional decree, leaving the legal status of the parties unchanged in many respects, but relieving both parties from all obligations and rights to cohabitation while an adjustment of their respective property interests and the amount of support thereafter are fixed by the decree. We have also concluded that where a party has prayed for a divorce from bed and board and has adduced sufficient proof duly corroborated in support thereof, and in the same action the other party has prayed for an absolute divorce but has not adduced sufficient proof duly corroborated in support thereof, then the trial court has no discretion in granting the remedy, but must grant the divorce from bed and board as prayed. The foregoing principles and rules were announced, discussed, and applied in Yost v. Yost, 143 Neb. 80, 8 N. W. 2d 686.

Also, as stated by this court in Robinson v. Robinson,

164 Neb. 413, 82 N. W. 2d 550, and reaffirmed in Birth v. Birth, 165 Neb. 11, 84 N. W. 2d 204: "A divorce or legal separation must be grounded on a legal fault within the grounds enumerated in the statutes and proved in the manner therein provided. One party may not create the grounds that will sustain him or her in maintaining such a suit. It is not the province of the courts to grant such decrees for sociological reasons. The policy of the state relative to marriage is fixed by the Legislature. It is not for this court to do what it deems best for the parties. The only relief that may be granted is that provided by statute when the evidence is sufficient to bring the case within its purview."

In Prosser v. Prosser, *supra,* this court held: "Under the provisions of section 42-318, R. R. S. 1943, the earnings of a husband and his ability to earn are proper elements to be taken into consideration in determining the amount of alimony to be awarded in a suit for divorce.

"Although the statute provides that the wife shall be allowed alimony out of the husband's estate in such an amount as the court shall deem just and reasonable, having regard to the ability of the husband, his earning capacity is an element to be considered and, in a proper case, the allowance of permanent alimony may exceed the value of the husband's estate at the time the marriage is dissolved.

"The amount of alimony to be granted a wife is not to be determined alone from the property possessed by the husband. Many other factors enter into the determination such as the husband's age, health, earning capacity, future prospects, and social standing."

In that connection, also, section 42-313, R. R. S. 1943, provides in part: "* * * also upon every divorce from bed and board, the wife shall be entitled to the immediate possession of all her real estate in like manner as if her husband were dead." Further, section 42-314, R. R. S. 1943, provides in part: "* * * upon every di-

vorce from bed and board, the court may make a further decree for restoring to the wife the whole, or such part as it shall deem just and reasonable, of the personal estate that shall have come to the husband by reason of the marriage, or for awarding to her the value thereof, to be paid by her husband in money." See, also, § 42-318, R. R. S. 1943.

Finally, in Dwinnell v. Dwinnell, 165 Neb. 566, 86 N. W. 2d 579, we held: "Where the evidence in a divorce suit sustains a finding of cruelty on the part of the husband towards the wife, and is corroborated as required by law, the action of the district court in granting a divorce to the wife is proper and ordinarily will not be interfered with by this court on appeal.

"In an action for divorce, if the evidence is principally oral and is in irreconcilable conflict, and the determination of the issues depends upon the reliability of the respective witnesses, the conclusion of the trial court as to such reliability will be carefully regarded by this court on review.

"The fee allowed for the service of an attorney for a wife in a divorce suit should be sufficient to adequately compensate for the service necessary to be performed.

"On appeal in a divorce suit from the amount of the fee allowed to the wife for services rendered by her attorney, this court will interfere only to correct a patent injustice resulting from an allowance which is clearly excessive or insufficient."

At the outset it should be said that we discover from an examination of the voluminous record that the testimony of plaintiff and defendant with regard to their allegations of extreme cruelty was in irreconcilable conflict in some material respects, but we find no competent evidence which in any manner corroborated defendant's testimony that plaintiff had been guilty of extreme cruelty. As a matter of fact, the testimony of the only witness called by defendant, purportedly for the purpose of corroborating his testimony, actually cor-

roborated the testimony of plaintiff in several material respects. In that connection, we conclude that the trial court properly denied defendant an absolute divorce and dismissed his cross-petition. The first assignment has no merit.

We turn then to defendant's contention that the trial court erred in granting plaintiff a divorce from bed and board. We conclude that such contention has no merit. In that respect, the record, as briefly summarized, discloses the following: At the time of trial plaintiff was 50 years old. Although generally in good health, she was simply a housewife and mother without other employment during her marriage to defendant. She was a Catholic but defendant was not. At time of trial, defendant was a prominent and able business executive, 49 years old, who was earning a salary of $39,000 a year. He was generally in good health except for palpitation or muscle spasm of his heart at rare intervals of stress and strain, for which no medical treatment had ever been prescribed and which did not generally interfere with his employment.

The parties were married at St. Joseph's Rectory at Owatonna, Minnesota, on October 22, 1938. Plaintiff contributed several hundred dollars to the marriage. Defendant was then and ever since has been employed by the Northern Natural Gas Company, hereinafter generally called the company. Soon after their marriage the parties came to Omaha for a few weeks, then went back to Owatonna for another few weeks, while defendant arranged the opening of an office for the company in Minneapolis, where the parties moved and lived from January 1939 until March 1944. They then moved to Omaha and have since resided there.

In 1939 defendant's salary was $3,600 a year. However, his salary was gradually increased each year thereafter until it was $8,416.74 in 1947. Thereafter, his yearly salary, payable semimonthly, was materially increased each year until it was $36,000 in 1956, and $39,000 in

1957. Previously, defendant had been made a vice-president of the company in charge of wholesale marketing, public relations, and area development. He was an officer of and interested in other related companies and associations. He also became active in certain business and social organizations and took some part in the budget problems of a Methodist church in Omaha, although he seldom attended either that church or plaintiff's church. In the meantime, plaintiff became active in St. Margaret Mary's Catholic Church, the P. T. A., Creighton Prep Mother's Club, and the Christ Child Society, all of which were related to the welfare of the family.

During the first few years of their marriage, defendant's salary required the parties to live modestly, and they had financial difficulties. However, in later years defendant's increases in salary permitted them to assume a more modern and comfortable social manner of living. In that connection, from about 1942 until this action was filed on September 25, 1956, defendant's semimonthly salary checks were deposited in a joint bank account. Thereupon, as requested by defendant, because he was not interested and did not want to be bothered about it, plaintiff kept the family books, generally wrote all checks except for defendant's personal use, paid all home and family bills and expenses, and, with defendant's assistance, plaintiff transacted part of their business matters during which time they purchased their home and accumulated certain personal property hereinafter discussed.

The first serious marital difficulty between the parties occurred in late 1941 and early 1942, but then, and again at other times, they became more or less reconciled until in January 1950. From that time, except for short intervals until this action was filed, there existed a state of marital and family uncertainty, tension, and unhappiness. To state the lurid reasons for it at length would serve no useful purpose. It is sufficient to say

that plaintiff's evidence, corroborated not only by five witnesses, one of whom was called by defendant, but also by certain exhibits appearing in this record, clearly established defendant's sullen, irresponsible, disloyal, and calculatingly cruel treatment of plaintiff and their children.

The record also established by amply corroborated evidence that plaintiff was a good housekeeper and cook; that she was a good mother who loved and properly cared for and disciplined her children, who loved and respected her, and whose conduct was excellent; and that plaintiff did everything reasonably within her power to retain the love and respect of defendant and to secure, protect, and preserve the marriage relation and the happiness and welfare of the family, but defendant would have none of it, preferring only to satisfy his own selfish ambitions and desires. We conclude that plaintiff had a right to maintain and be granted a divorce from bed and board, and that the trial court was right when it granted such relief. The second assignment has no merit.

We turn then to defendant's contention in the third assignment that the trial court erred in awarding plaintiff an excessive and disportionate share of the property accumulated. We conclude that such contention has no merit. In that connection, for the full support and maintenance of plaintiff and their three minor children, including their education through high school and college, the oldest of whom was ready for college and the next oldest would soon be ready for college, the defendant was ordered to pay to the clerk of the district court for plaintiff the following allowances, to wit: The sum of $15,000 per year in 12 monthly installments for each of the 5 years following the date of the decree; thereafter, to so pay $10,000 per year for each of the succeeding 5 years; thereafter, to so pay $7,500 per year for each of the succeeding 5 years; and thereafter to so pay $2,500 per year for each of the succeeding

10 years. Such payments were ordered to commence immediately upon entry of the decree, giving defendant credit for any amounts previously paid for such purposes after the commencement of this action.

It will be noted that defendant's salary was $39,000 per year, and there is competent evidence that he offered plaintiff $18,000 per year for an absolute divorce, although he testified that he only offered $10,000 or $12,000 a year. Be that as it may, as stated in defendant's brief, and reiterated in oral argument: "Defendant does not assign as error the amount of this allowance." Doubtless that position was taken by defendant because, under the terms of the present decree, defendant would ultimately pay $187,500, but during such period, at his present salary of $39,000 per year, defendant would have earned the sum of $975,000, leaving him $787,500 to spend, without any responsibility for raising or educating his children or maintaining a home for plaintiff and his family. In that connection, the total indebtedness of the parties at time of trial, except the mortgage on their home hereinafter discussed, was only about $3,000 plus current obligations.

Although defendant did not contest the aforesaid allowances, he did request a modification of their terms so that he could supervise the proportionate manner of the use and expenditure of such allowances and thus be assured that they would in fact be used for the proper support and education of his children as well as for plaintiff's support. Such request has no merit because we find no reason in this record for concluding that plaintiff will not be able and willing to properly and fairly supervise and make the expenditure of such allowances without any supervision thereof by defendant, who had generally delegated such responsibility to plaintiff since 1942.

The real estate owned by plaintiff and defendant was Lot 24, in Block 134, Dundee Place, an addition to Omaha. It was their home, known as 301 South Fifty-

first Avenue, which the parties had purchased for $20,500 in 1949, but which was probably worth about $23,500 or $24,500 as of November 1, 1956. There the family had lived until this action was filed, when defendant left, having theretofore lived in the same house with plaintiff but having entirely refused any marriage relations with her after July 1953. That property was encumbered by a mortgage. The balance still owing thereon by the parties was $5,000 as of November 1, 1956. The decree awarded that home to plaintiff absolutely, but required her to assume and pay such mortgage indebtedness as of the date of the decree, and to pay any other claims or liens against said property. The decree also gave plaintiff absolutely all the furniture, fixtures, household effects, and appliances owned by the parties in the home, for the use of plaintiff and their children. Some of such property was new, some old, some valuable, and some not, but it was all worth about $6,000. Defendant, who lived in a hotel in Omaha and could not legally remarry, would have no use for such property.

In that connection, plaintiff and the children were certainly entitled to the exclusive use and benefit of all such property in any event. To have disposed of it by simply giving plaintiff and their children the use of it would not have deprived plaintiff of her interest in the real estate, but would have imposed substantial obligations upon defendant which he had not in the past cared to assume, and would have permitted him to continue to interfere with and harass the family. We conclude that the trial court wisely and properly disposed of the home and contents as it did.

A 1955 Chrysler New Yorker automobile, worth about $2,150, and owned by the parties, was awarded absolutely to plaintiff for the use and benefit of the family. It was purchased for such purpose, and defendant seldom if ever used it. He did not need to do so because he had the continuous use of an Oldsmobile sedan owned and

furnished him by his employer. On the other hand, plaintiff doubtless needed the automobile to transport their children to and from school and elsewhere, and for her own necessary transportation. We conclude that the disposition of their automobile was proper in every respect.

A savings account in plaintiff's name in the Omaha National Bank, which account contained $1,300 (actually $1,309.50), was properly awarded to plaintiff for her immediate necessary use.

Twenty-four United States Savings Bonds in the face amount of $2,400, which were purchased in the names of both parties, were properly divided equally between them.

Defendant owned 31 shares of Husky Oil Company stock, worth $341, 12 shares of Husky Oil Limited stock worth $156, and 2 shares of Occidental Building & Loan Association stock worth $400. Such shares of stock were awarded absolutely to defendant. Of course, he could make no complaint about that.

Some 294 shares of Northern Natural Gas Company stock, purchased in the names of both parties, and worth about $53 a share as of February 7, 1957, together with dividends thereon payable to both parties and accruing since this action was filed, were divided equally between the parties. All stock of the same company which might be acquired pursuant to a certain stock purchase plan after entry of the decree was awarded to defendant absolutely. All option rights to purchase 6,000 shares of such company stock at $40.50 a share under an agreement dated April 28, 1956, were limited to defendant, except that plaintiff, upon appropriate written instructions to defendant and tender of adequate purchase money therefor, was permitted to so acquire not to exceed 2,400 shares of such stock at the option price. We conclude that the disposition aforesaid of their shares of such stock was proper and just in every respect.

A Connecticut General Life Insurance Company policy, No. 778999, on defendant's life, in the amount of $20,000, wherein plaintiff was named as beneficiary, was ordered to be kept in force by defendant without any change of beneficiary or encumbrance by loan. Such disposition was proper in every respect in order to protect the future support and maintenance of plaintiff and their children. In that connection, certain other policies of life insurance upon defendant's life, and all group policies in force by virtue of defendant's employment, were ordered delivered to defendant to be held under his full control and disposition. All insurance policies upon the life of plaintiff or their children were required to be maintained by plaintiff so long as she desired to continue them in force and effect for her own benefit. Certainly defendant could not reasonably complain about such disposition.

In order to carry out the terms of the decree and make division of the property owned by the parties as provided in the decree, each was appropriately ordered to execute and deliver such instruments as were necessary to effect transfer of such rights as provided in the decree, and upon failure to do so, the decree was given full force and effect as if that had been done.

Plaintiff was allowed $6,500 as attorneys' fees for the services of her attorneys in the district court, together with $800 for expenses of investigation and carrying on the litigation, less a credit for any unexpended part of $300 already paid by plaintiff to her attorneys for such purposes. In that connection, the record discloses that plaintiff rested, except for the introduction of additional supporting evidence pertaining to attorneys' fees and expenses in connection with the matter as might be necessary, the thought being that at a later time the court and counsel for plaintiff and defendant might get together and the matter could then be handled. That was satisfactory to defendant's attorney, who indicated that it might be a matter that could be handled

without evidence, but if it was not, such evidence could be put in later and probably better after they knew what the decision was. In that connection, we have found no direct evidence in the bill of exceptions either with regard to the value of the services of plaintiff's attorneys in the district court or that establishes any amount of expenses necessarily incurred to enable plaintiff to investigate and carry on the litigation, or how much if any of the $300 paid by plaintiff for such purposes remained unexpended. The failure to adduce any evidence of the value of the services of plaintiff's attorneys in the district court is not fatal to their allowance because that matter is controlled by the opinion in Dwinnell v. Dwinnell, *supra,* and an examination of the entire record of the proceedings presented to the trial court and reviewed by this court. We therefore conclude that the allowance of $6,500 for the services of plaintiff's attorneys in the district court was not clearly excessive.

However, in the light of the record before us, we conclude that the allowance of $800 for expenses of investigation and carrying on the litigation, less a credit for any unexpended portion of $300 paid by plaintiff for such purposes, was erroneous as without support of any competent evidence appearing in the bill of exceptions, as required. We conclude that in such respect, and that only, the judgment of the trial court should be and hereby is modified to entirely eliminate such allowance for expenses of investigation and carrying on the litigation. In all other respects, we conclude that the judgment of the trial court should be and hereby is affirmed.

All costs are taxed to defendant, including an allowance of $3,500 for services of plaintiff's attorneys in this court.

AFFIRMED AS MODIFIED.