ANNA M. SCHOLZ, APPELLEE, v. JOHN P. SCHOLZ, APPELLANT.

109 N. W. 2d 156

Filed May 5, 1961. No. 34926.

*Boyle & Hetzner,* for appellant.

*Webb, Kelley, Green & Byam,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action by Anna M. Scholz, plaintiff-appellee, hereinafter called the plaintiff, for a divorce from bed and board. Defendant-appellant, John P. Scholz, here-

inafter called defendant, cross-petitioned for an absolute divorce. The trial court dismissed the cross-petition and granted the plaintiff a divorce from bed and board.

Defendant makes two assignments of error: That the trial court erred in granting a limited divorce under the law and the evidence; and that the plaintiff was awarded an excessive and disproportionate amount of the property of the parties.

The parties were married in 1934. Five children were born to the marriage, only two of whom are minors, a boy who was 10 at the time of the filing of the petition, and a girl 9. Defendant is operating the Brown Derby Tavern at Twenty-fourth and F Streets in the city of Omaha. The business, started in October 1933, a few months before the marriage of the parties, was built by the joint efforts of both the plaintiff and the defendant. However, since 1945, plaintiff's connection with the business has been limited to the keeping of the books at the home of the parties. The parties owned a business building across the street, the sale of which was directed in the decree, and which has been sold since the decree to pay the indebtedness on the tavern. There are three furnished apartments above the tavern, one of which is occupied by the defendant. The others are rented for $60 each per month. In addition, the parties own a cabin and 25 lots at Kings Lake, valued at between four and five thousand dollars, and a home at 2535 North Sixtieth Avenue in Omaha, occupied by the plaintiff, purchased at a cost of $23,500, on which there is a present mortgage of approximately $13,000. The payments on the mortgage are $180 per month. The tavern building is valued at $27,500, and the value of the business is set at $25,000 by the testimony of plaintiff because of an offer of that amount in 1959. The value placed by the defendant's witnesses was a top of $15,000, plus an inventory of approximately $3,000.

There is evidence that the defendant had been seen in the company of another woman under suspicious cir-

cumstances. There is evidence which might create a suspicion that the plaintiff had developed an unnatural attachment to another woman who had lived in the home of the parties between 1943 and 1959, the latter part of the period over the objection of the defendant. It will serve no useful purpose to detail the evidence of either side herein. What has been said will indicate that neither of the parties is entirely without fault and that while it would not justify improper conduct on the part of the defendant, it could be suspicioned that the plaintiff's lack of affection drove the defendant to other associations. It should be stated that the evidence was not as one-sided as the trial court's decree might indicate.

In Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368, we said: "It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances."

Pursuant to the provisions of section 25-1925, R. R. S. 1943, this court is required in equity cases to try findings of fact complained of de novo and to reach independent conclusions without reference to the findings made by the trial court.

However, as we said in Shomaker v. Shomaker, 166 Neb. 164, 88 N. W. 2d 221: " 'In an action for divorce, if the evidence is principally oral and is in irreconcilable conflict, and the determination of the issues depends upon the reliabiilty of the respective witnesses, the conclusion of the trial court as to such reliability will be carefully regarded by this court on review.' "

In both Shomaker v. Shomaker, supra, and Workman v. Workman, supra, we said that any unjustifiable conduct by either the husband or the wife which destroys the legitimate ends and objects of matrimony constitutes extreme cruelty as defined in section 42-302, R. R. S. 1943.

The trial court awarded the plaintiff a divorce from bed and board; awarded custody of the children subject

to rights of reasonable visitation; and dismissed the defendant's cross-petition. The home of the parties was awarded absolutely to the plaintiff, subject to the mortgage, except that any delinquencies should be paid by plaintiff. She was also awarded all of the furniture, household fixtures, and appliances in the home; the 25 lots and the improvements at Kings Lake; and the building housing the tavern. The defendant was also required to maintain certain insurance policies; pay certain unpaid bills; and was ordered to pay $2,000 to plaintiff's counsel, which we assume was in addition to a temporary allowance of $250. The defendant was awarded the tavern business, and was given a 10-year *"non-assignible"* lease of the ground floor and basement of the building occupied by the tavern and given by the decree to the plaintiff. For this lease defendant was required to pay a monthly rental to the plaintiff of $100, and was required to pay all utilities used in the tavern and certain maintenance costs. The parties were assigned their respective automobiles.

The uncontradicted evidence indicates that the net income from the tavern operation for the 4 years preceding the trial was: For 1956, $5,075.92; for 1957, $6,845.66; for 1958, $6,375.84; and for 1959, $2,565.58. This action was filed in June 1959. The award in this case is unreasonably arbitrary and excessive to the point of oppression when we consider plaintiff was given all the property except the actual business. The following from defendant's brief serves to illustrate the point: "As a matter of simple arithmetic the decree breaks down as follows:

| | |
|---|---:|
| "Defendant to pay plaintiff rent | $1,200.00 |
| "Defendant to pay plaintiff child support | 1,800.00 |
| "Defendant to pay insurance | 719.04 |
| "Estimated tax annually to Government | 700.00 |
| | |
| "Total | $4,419.04 |

"Defendant's average annual earnings (4-

```
    year period)                          $6,000.00
"Balance remaining for defendant or a
    monthly income of $131.74            $1,580.96
```
from which amount the defendant must supply food, clothing, lodging for himself, car expense, his own personal life insurance and liquidate some $2,000.00 in attorney fees, $665.13 in bills and the costs of his own counsel in this action."

A divorce from bed and board is in the nature of a conditional decree, leaving the legal status of the parties unchanged in many respects but relieving both parties from all obligations and rights to cohabitation while making necessary adjustments of their property to assure support during the continuance of the relationship. It was not intended that the parties in a limited divorce would have all of the benefits of an absolute divorce except the legal dissolution of the marriage.

Section 42-318, R. R. S. 1943, provides as follows: "Upon every divorce from the bonds of matrimony for any cause, excepting that of adultery committed by the wife, and also upon every divorce from bed and board for any cause, if the estate and effects restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case. All such decrees shall provide that all payments of money shall be made to the clerk of the district court and by him disbursed to the party entitled thereto."

In Shomaker v. Shomaker, *supra*, we said: "The division of property and the allowance of alimony and support money in divorce actions are always to be determined by the facts in each case relating to and in

accord with the many factors and elements heretofore announced by this court."

We now say that while the court has the power to adjust all the respective property interests of the parties in a limited divorce, it will not be done any further than necessary to effect a proper separation under the facts of the particular case.

We will not disturb the decree of the trial court so far as it grants a limited divorce to the plaintiff, but we see no reason in this case to make any property distribution except the following: The plaintiff is to have the exclusive use and occupancy of the home of the parties; the defendant is to make 'the mortgage payments and to pay for all necessary repairs; the parties are to work out some mutual arrangement for the joint use and occupancy of the Kings Lake property, but if they are unable to do so, the court is to do it for them; and the defendant is to have the use, occupancy, and management of the business property, and the sole management of the business operated therein. The defendant is to pay the plaintiff $125 per month support for herself and $50 per month for each of the children during their minority, or until the further order of the court, and to pay the medical and dental bills for the family. This will give the plaintiff $225 per month and a home, which is more than the defendant will have even considering the rent from the apartments above the tavern. The plaintiff should be awarded the custody of the two minor children, subject, however, to a right of reasonable visitation and the right of defendant to have the custody of the children at least two Sundays a month, if he so desires.

We said in Shomaker v. Shomaker, *supra*: "On appeal in a divorce suit from the amount of the fee allowed to the wife for services rendered by her attorney, wherein there is no direct evidence of the value thereof other than the record of the proceedings, this court will interfere only to correct a patent injustice resulting

from an allowance which is clearly excessive or insufficient."

On the record in this case, we feel that the allowance made by the trial court was ample for the services rendered by plaintiff's attorneys, and no allowance is made for their services in this court.

We reverse the decree, remand the cause, and direct the trial court to enter a decree in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.