RICHARD FRANK UPAH, JR., APPELLANT, v. JOSEPHINE MARIE ANCONA UPAH, APPELLEE.

122 N. W. 2d 507

Filed July 12, 1963.     No. 35434.

Marchetti & Samson, for appellant.

McCormack & McCormack and Webb, Kelley, Green & Byam, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This is a divorce action. The plaintiff sued for an absolute divorce on the ground of extreme cruelty. The defendant cross-petitioned for a limited divorce from bed and board on the ground of abandonment, for allowances for child support, for alimony in the nature of separate maintenance, and for a division of the real and personal property of the parties. The trial court dismissed the plaintiff's petition, granted the defendant a divorce from bed and board, and awarded allowances and a division of property hereinafter discussed in detail.

The plaintiff appeals assigning numerous errors. They may be grouped into three questions:

1. Was the defendant entitled to a divorce from bed and board on the ground of abandonment?

2. Is the plaintiff entitled to a divorce from the defendant on the ground of extreme cruelty?

3. What is the proper disposition of the questions of allowances for child support, alimony, and division of property?

In order to decide the first question presented, a review of the court history of this litigation is necessary. On October 11, 1957, very shortly after the parties separated, the plaintiff filed his petition for divorce on the ground of extreme cruelty. Three days later, on October 14, 1957, the defendant wife filed a motion for allowances. Hearing was had on October 18, 1957, and the court by subsequent order judicially fixed the terms and conditions of their separation, fixed the amount of temporary support, declared custody of the children in the defendant, and fixed in detail the times and requirements as to visitation of the two children of the parties. For over 4½ years, and until the time of trial of this case in August 1962, this order stands undisturbed as

the measure of the obligation of their judicially declared terms of separation. Subsequent to this order, the parties jointly moved, and were granted release of the child support and lien on their real estate. The record discloses that in the fall of 1958 the plaintiff bought a new home for the wife and children in which they are now living. It also appears that a motion of the defendant attacking the sufficiency of the petition was filed November 15, 1957. Hearing was had on defendant's motion and an order was entered October 27, 1961, overruling it and giving her 3 weeks to answer. On November 17, 1961, responsive to this order, the defendant filed an answer and cross-petition for a limited divorce from bed and board only, alleging as her sole grounds willful abandonment by the plaintiff for more than 2 years. Section 42-302, R. R. S. 1943, authorizes a divorce from bed and board "for utter desertion of either party for a term of two years." The trial court in granting the limited divorce for desertion computed the time by using the period of separation after the filing of the divorce and the entry of the court's separation and allowance order of January 28, 1958. This was error. Time elapsing during the pendency of a divorce case may not be added to or counted in the period required to establish a claim of "utter desertion" under the statute. The parties have a right as a matter of public policy to assert their claims in court, and even though judicially found to be groundless, should not bear the risk of having their right to be heard defeated by the danger of the length of the period of time elapsing during the pendency of the litigation. The correct rule is stated in Ellis v. Ellis, 115 Neb. 685, 214 N. W. 300: "It is elementary that while a divorce proceeding is pending the parties must live separate and apart. Such a separation is not wrongful, hence a charge of abandonment cannot be based thereon. * * * We therefore conclude that such tacking of time cannot be had, and that the trial court erred in holding to the contrary. The

decree of the court granting the defendant a divorce on the ground of abandonment must be, and is, set aside." To require cohabitation, with the implication of intercourse and forgiveness during the pendency of a divorce case in order to defeat a subsequent possible claim of desertion, would be against public policy and contrary to our subsequent holdings, including the Wright v. Wright, 153 Neb. 18, 43 N. W. 2d 424, holding that parties must live apart during a divorce proceeding, wherein we followed and cited the Ellis holding, *supra*, and Dunn v. Dunn, 26 Neb. 136, 42 N. W. 279. This is the general rule. See, 27A, C. J. S., Divorce, § 56 (4), p. 181; 17 Am. Jur., Divorce and Separation, § 103, p. 322.

The decree of the district court granting a limited divorce from bed and board to the defendant must be reversed.

We turn now to the question of whether the plaintiff is entitled to a divorce on the ground of extreme cruelty. We are required to try factual questions de novo on the record and reach independent conclusions without reference to the findings made by the trial court. § 25-1925, R. R. S. 1943; Scholz v. Scholz, 172 Neb. 184, 109 N. W. 2d 156. The trial court, in light of the result reached as to desertion, made no findings on the issue of extreme cruelty.

Both parties were about 35 years of age, were married in 1950 at the age of 22, have two children, a boy and a girl, ages 9 and 6. They were married while the plaintiff was in college. They had no financial resources whatsoever, and the plaintiff drove a taxicab and operated a cleaning service to help pay expenses. He was graduated from Creighton University in 1951. The defendant was employed as a secretary at the time of the marriage and later on helped for a short period of time when the plaintiff was setting up a retail unpainted furniture business which is his present occupation. During their marriage they lived in a one-room attic apartment rented at $35 per month, a prefabricated house

rented at $85 per month, and before their separation in 1957, rented a more comfortable house for $125 per month and bought new furniture and appliances. Throughout the marriage, the defendant suffered intermittently from multiple sclerosis, requiring hospitalization at times, a condition known to the plaintiff at the time of the marriage. The defendant introduced no medical evidence in this respect, and it appears that her suffering from this condition and periods of hospitalization are not as frequent since their separation in 1957 as before. The record is undisputed that the plaintiff is very industrious, worked late at night building up his furniture business in downtown Omaha, and also worked in a partnership in two other enterprises which eventually failed financially. It appears that both parties were extremely close to their respective parents and families, that neither drank nor smoked, that both had the same religious affiliation, that several attempts to reconcile and settle their differences were made by members of the families, religious counselors, and friends, which were partially successful and unsuccessful. Brevity forbids a further detailing of the general background of this marriage.

We shall not burden the record with the details of the evidence with respect to cruelty. The defendant claims no cruelty against the plaintiff, admits continual "arguments" with the plaintiff, and in her very brief direct testimony, she fails to deny in any substantial sense the detailed explicit recitals of events related by the plaintiff. The record shows this couple to be almost completely incompatible from the beginning in 1951. The defendant came from a family of some means and is a graduate of Duchesne College. Their troubles centered around money and maintaining a certain social position and demanded standard of living. The record shows arguments, harping, and nagging about demands for a checking account, charge accounts, household appliances, the poverty of their living conditions, the fact

that her family and friends had better houses than theirs; and many other subjects. The improvement in their homes, the buying of new appliances, and other changes did not diminish this continual course of conduct on her part. These arguments took place in front of the children and despite the plaintiff's protestations, she continued them. These arguments affected the children. General incompatibility ripened into cruelty and abuse of the plaintiff. She referred to the plaintiff as a "bum," that she should never have married him in the first place, that he was from South Omaha, and that he was nothing and would amount to nothing. When they moved to their third house, newly carpeted and furnished with new furniture, she complained bitterly about living in South Omaha. There is much other testimony in the record as to the extremely violent language used by the defendant with reference to the plaintiff's parents and on other matters. Except as to one or two of these statements and incidents, the defendant's testimony is bereft of denial, she conceding that they had many arguments. There is, for example, undisputed evidence that during the time of their final period of trouble in 1957, the defendant accompanied one of her marriage counselors to several different bars and places of entertainment and that he was present in the home in casual dress on many occasions. On being questioned about this, her undenied answer was, "Why don't you get yourself a nun?"

The evidence shows that as a culmination of the long hours of work, the trouble at home, and the death of the plaintiff's father, the plaintiff became ill and was hospitalized in January 1957.

The plaintiff's testimony in this case was corroborated in many pertinent details by Dr. Gurnett, the physician who had treated both parties, by the nextdoor neighbor, by a business acquaintance, and by a mutual social and personal friend, Joan Weiss, in whose home the parties had visited constantly for many years and who helped

effect a reconciliation at one time between the parties. Joan Weiss confirmed the continual arguing, bickering, and nagging of the plaintiff as to money, checking account, household appliances, and also the defendant's admissions as to continual nagging, promises to quit, and that the defendant's own brother had interceded with her to quit nagging and change her course of conduct.

The defendant's testimony is very brief, very general in nature, and lacking in denial of many, if not almost all, of the pertinent and detailed testimony as to cruelty by both the plaintiff and his corroborating witnesses. The defendant alone testified in her own behalf and produced no corroborating testimony.

Here pertinent is the following from DeWaal v. DeWaal, 148 Neb. 756, 29 N. W. 2d 371: "Although no violence is threatened, yet harping and nagging, continued for years by either a husband or wife, concerning conduct above reproach, may be so unreasonable as to utterly destroy the peace of mind, seriously impair health, and ruin all legitimate ends and objects of matrimony, and constitute extreme cruelty 'by other means,' as defined in section 42-302, R. S. 1943. See Brown v. Brown, 130 Neb. 487, 265 N. W. 556; Faris v. Faris, 107 Neb. 214, 185 N. W. 347; Oertle v. Oertle, 146 Neb. 746, 21 N. W. 2d 447; Hartshorn v. Hartshorn, 104 Neb. 561, 178 N. W. 186."

The above holding was followed in Sell v. Sell, 148 Neb. 859, 29 N. W. 2d 877, and follows the general rule. See 27A C. J. S., Divorce, § 28 (1), p. 75.

It further appears clear from the whole record in this case that the best interests of the parties themselves, their children, and society would be best served by the granting of an absolute divorce. We have said many times that ordinarily an absolute divorce is to be preferred to a limited divorce from bed and board where the pleadings and evidence sustain such findings. We hold that an absolute divorce should be granted to the plaintiff in this case.

The remaining and difficult problem is the question of allowances for child support, alimony, and division of the property of the parties. The rule to be applied by the court in reaching a determination of this issue is well settled, and we will not repeat it here. See, Jablonski v. Jablonski, 173 Neb. 544, 114 N. W. 2d 1; Malone v. Malone, 163 Neb. 517, 80 N. W. 2d 294; Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139.

The district court awarded the defendant $65 per month for each child during minority, or until further order of the court, and their medical and dental expenses; awarded the defendant the exclusive use of the home bought by the plaintiff in 1958 together with the household goods, furniture, and furnishings; and required the plaintiff to pay the mortgage, insurance, and tax payments on the home and to pay all necessary repairs. The plaintiff was ordered to pay $225 per month separate maintenance with no time limitation specified and, in addition thereto, all defendant's medical and dental bills.

The parties own a home at 4916 Walnut Street, Omaha, Nebraska, purchased by the plaintiff in 1958 as a home for the defendant and the children. It has a market value of $15,000 and an unpaid balance due on the mortgage against it of $11,474.59. The household goods and furnishings are worth about $800 with a replacement cost of about $2,000. This is the total accumulated property of the parties outside of the plaintiff's furniture business. The plaintiff operates a retail used furniture business on rented premises in Omaha. No evidence appears as to any accumulated capital assets of this business except the listing of office equipment and vehicles, and their depreciated value, in the plaintiff's income tax returns. These would indicate a value of around $5,000.

The evidence shows that the plaintiff had $100 in his personal bank account and $7,500 in his business account with accounts payable of $6,000, leaving a business bal-

ance of about $1,500. The evidence is in dispute as to his net income, his 1961 income tax return showing a net income of about $9,900, about $9,600 for 1960, and about $12,000 for 1959. The dispute centers around the significance of payments made by the plaintiff to his mother of about $2,500 per year. Considering these payments as part of his income for the purposes of fixing allowances, we come to the conclusion that the plaintiff's annual net income before taxes for the past 3 years runs between $11,000 and $13,000. We observe that it is necessary to preserve the plaintiff's ability to operate his business and its capital structure. We also note the highly competitive nature of this enterprise and the long-time period it has taken through hard work to build it up to its present level. We also take into consideration the fact that the defendant has multiple sclerosis and will require periodic medical attention. There is no medical testimony in the record enabling the court to explore this situation precisely. It appears she has been hospitalized for varying periods about 15 times since their marriage and most of them prior to the time of separation. It does not appear clear that she has been hospitalized more than three times since the separation in September 1957. The defendant is not muscularly crippled in any way and, except for the periods of hospitalization, her own testimony does not sustain a finding that she has not led an almost normal life outside the range of the acute attacks. The frequency of the attacks, the length of the remissions, and the degree and range of their progressiveness vary in individual cases of this disease and are not ascertainable from the record as to this defendant. It is true that the plaintiff knew of her condition in this respect at the time of their marriage in 1950. It appears that the parties have received help with the expenses of her hospitalization periods through the insurance program of the business of the defendant's father, Ancona Brothers Wholesale Grocery Company, on the basis

of part-time typing work. The defendant appears to be a good mother, and there is no dispute as to the custody of the children. The parties have had virtually no difficulties as to visitation privileges.

We have considered all of the evidence as it bears on all of the factors we are required to consider under the applicable rule as to alimony and property division in a divorce case. As in most divorce cases involving children, the family relationship may not be severed without working hardship on both parties and the children. Many efforts were made to save this home and marriage but to no avail. It is not so important to rectify past wrongs or deviations as it is to try to accomplish a solution that will measure up to the future best interests of these young people and their children.

One conclusion is inescapable from all points of view, and that is they should be divorced and certainty given their status and future rights and obligations. The troubles developing in the almost 6 years of the pendency of this action between this couple demonstrate the wisdom of resolving their rights with certainty and finality.

We hold, therefore, as follows:

1. That plaintiff is granted a decree of absolute divorce from the defendant and the judgment awarding the defendant a limited divorce is reversed and her cross-petition dismissed.

2. That defendant is awarded the custody of the two minor children subject to reasonable visitation rights of the father, and defendant is awarded the sum of $65 per month for the support of each child during their minority or until further order of the court.

3. The defendant is awarded the fee simple title absolute to the property at 4916 Walnut Street, Omaha, Nebraska, being Lot 21, Block 27, West Side Addition, together with all furniture, furnishings, and household goods.

4. The defendant is awarded permanent alimony in the sum of $27,000, payable at the rate of $225 per month

for a period of 10 years from the date of the entry of decree on mandate of this court payable to the clerk of the district court.

5. The plaintiff is awarded title to all property except that specifically granted to the defendant herein.

6. The plaintiff is to pay all costs, including attorney's fees, awarded herein.

The plaintiff complains of the trial court's award of $1,000 attorney's fees to defendant's attorney claiming excessiveness. Although this amount appears to be ample considering that the trial lasted 3 days and the defendant's sole testimony was her own, all of the facts in connection with counsel's services do not appear of record and we cannot say the district court abused its discretion and, consequently, we will not disturb it. We allow an additional fee to counsel for defendant for services in this court of $100.

The judgment of the district court is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.