PAULINE ABEL, APPELLEE, v. ROBERT ABEL, APPELLANT.

96 N. W. 2d 276

Filed May 1, 1959. No. 34586.

*Wright, Simmons & Harris,* for appellant.

*Neighbors & Danielson,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a divorce action brought by Pauline Abel, plaintiff, in the district court for Morrill County, against Robert Abel, defendant. The plaintiff filed her petition on February 24, 1955. On September 21, 1955, a default decree was rendered by the trial court granting the plaintiff an absolute divorce from the defendant on the ground of extreme cruelty, and due to the excessive use of intoxicating liquor by the defendant. On December 27, 1955, the defendant filed a petition to vacate and set aside the decree of divorce. On June 21, 1956, the defendant filed a supplemental petition to vacate and set aside the decree of divorce granted the plaintiff. On February 1, 1957, the trial court set aside that portion of the decree providing for the division of property, and ordered the question of child support and property division to be determined by further hearing with or without additional pleadings as counsel would be advised. On March 14, 1957, the trial court awarded the custody of Eleanor Abel, minor child of the parties, to the exclusive custody of the plaintiff, and awarded each party the automobiles which were registered in each of their names. The trial court in its decree granted the plaintiff two options relating to the division of the property of the parties. It appears that in exercising one of the options the plaintiff elected to keep the restaurant, together with the fixtures, equipment, and inventory located therein, and the residence of the parties located in Bridgeport, together with all household furnishings and equipment located therein; to support the minor child, Eleanor Abel; and to pay the defendant the sum of $3,800 as follows: $2,500 in cash within 90 days from

the date of the decree, $1,000 on or before 15 months from the date of the decree, and $300 on or before 21 months from the date of the decree.

The defendant filed a motion for new trial which was overruled, and defendant perfected appeal to this court.

The defendant predicates error on the following: The trial court erred in awarding the defendant less than half of the net properties accumulated by the parties during their marriage; the trial court erred in its method of dividing the property accumulated by the parties during their marriage; and the trial court erred in its order involving attorney's fees.

The record discloses that the plaintiff and defendant were married at Bayard, Nebraska, on July 2, 1933, and that three children were born to this union, Robert Walter Abel, 20 years of age at the time the plaintiff filed her petition for divorce, Loretta Joan Woznick who was married, and Eleanor Kathrine Abel, 16 years of age when the plaintiff commenced her divorce action. At the time of the marriage, the plaintiff had no property. In the fall of 1933, the plaintiff and defendant rented a place and started farming. The defendant's father bought them furniture and gave them some farm equipment to work with. According to the defendant's testimony, they went out of the business of farming in 1944. At that time they had enough money to purchase the furniture and fixtures and lease a building in Bridgeport where they operated the Broadway Cafe. A year or so later they purchased the building. The restaurant building and the furniture and fixtures therein were all paid for prior to the time the plaintiff instituted her proceedings for divorce. The parties also owned a home in Bridgeport which was subject to a mortgage. They both worked in the restaurant to provide for the support and maintenance of their family.

This case is here for trial de novo upon the issues presented on appeal, as in other equity actions.

Inasmuch as this appeal involves only the division of

property owned by the parties, we deem the following to be applicable.

In Hoffmeyer v. Hoffmeyer, 157 Neb. 842, 62 N. W. 2d 138, it was held: "The court in determining the amount of alimony or in making a division of property in a divorce case will consider the age of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them and whether or not it was acquired by their joint efforts, and any other pertinent facts. * * * Upon the granting of an absolute divorce the trial court has a legal right to assign the property, both real and personal, acquired during the marriage by the joint efforts of the parties, between the parties as the equities require."

This brings us to the testimony relating to the value of the property. The defendant testified that the restaurant, including the equipment and good will of the business, was worth $15,000, and that 3 years prior to the time of trial he was offered $13,500 cash for the restaurant as a unit. He placed the value of the residence property of the parties at $11,000.

The plaintiff testified that the value of the building and the lot on which the restaurant was located, on September 21, 1955, was $4,500; that the interior equipment, consisting of all the supplies, fixtures, utensils, and other equipment used therein, on that date was valued at about $2,200; and that the value of the home was $10,500.

It was stipulated that the amount due on the mortgage on the residence on September 21, 1955, was $8,409.54. It was also stipulated that the defendant did not personally make any payments on this mortgage indebtedness subsequent to the payment of March 14, 1955.

Art Erickson, president of the Bridgeport State Bank and who had lived in Bridgeport about 45 years and

been associated with the bank for about 30 years, testified that he was acquainted with the Abels and the Broadway Cafe which was being operated by Pauline Abel. He further testified that he was acquainted in a general way with real estate values in Bridgeport by reason of his long residence there and being in close touch with the financial transactions in the community. He gave his opinion of the value of the Broadway Cafe, solely as to the real estate, the lot and improvements, as of September 1955, to be of the fair and reasonable cash value of $5,000 to $6,000, and the value of the residence in September 1955, to be from $10,000 to $12,000. He further testified that residence property had advanced a little in value, but the property in question would be of about the same value at the time of this hearing as it was in 1955, and the value of the restaurant would be about the same as it was in 1955; and that the values he gave were what he believed would constitute the cash values on the market.

It was stipulated that in July 1955, chairs were purchased for the restaurant at a cost of $190.90, and that in December 1955, a heater was purchased at a cost of $319.19. The plaintiff testified that she had redecorated the restaurant at a cost of $1,200.

A witness engaged in the restaurant business testified that he endeavored to buy the Broadway Cafe as a unit and as a going concern for $12,000, but his offer was refused; and that he had an opinion that since January 1955, the Broadway Cafe, as a unit, had a value of $12,000.

A witness engaged in the real estate and insurance business in Bridgeport since 1941 appraised the restaurant building at $7,500. This did not include the equipment. He appraised the value of the residence at $11,000. This did not include any furniture or fixtures.

The evidence further disclosed that at the time of trial the plaintiff testified that one daughter was married, the son, 22 years of age, was attending Wesleyan

University, and Eleanor, 18 years of age, was attending Chadron State College. The evidence further disclosed that the plaintiff contributed to the education and support of the son at Wesleyan and the daughter at Chadron State College, and that the defendant made no contributions of any kind toward the support or education of these young people.

The plaintiff has operated the restaurant since she obtained her decree of divorce on September 21, 1955, and also maintained the residence. She has received a small amount of revenue from renting rooms in the residence. The record fails to show what would be the average yearly net income from the restaurant.

As we view the evidence relating to the value of the real and personal property owned by the parties at the time of the hearing in the instant case, we conclude that the restaurant building, the lot, and the fixtures were of a reasonable value of $8,200, and the reasonable value of the residence of the parties was $11,000. It was stipulated at the time of this hearing that there was a mortgage on the residence property in the amount of $8,409.54. It appears from the decree of the trial court in the instant case that the trial judge considered the parties had an equity of about $3,000 in the residence. We consider the reasonable value of all the property accumulated by the parties by their joint efforts at the time of this hearing, after deducting the amount of the mortgage as heretofore mentioned, would amount to $10,790.46.

The trial court awarded the defendant $3,800 as his share of the division of this property.

We take into consideration the fact that the defendant had made no contribution of any kind toward the education or support of the son and daughter who attended college.

We award the plaintiff all the furniture and household equipment in the home.

As we view the evidence at the time of the hearing in

the instant case, we conclude that the decree of the trial court should be modified to allow the defendant the sum of $5,000, to be paid by the plaintiff in installments as follows: $2,500 within 90 days from the date of the issuance of the mandate in this case; $1,000 on or before 15 months from the date of the issuance of the mandate; and the balance of $1,500 to be paid on or before 36 months from the date of the issuance of the mandate, and the plaintiff shall not be required to pay any interest on the deferred payments until after they are due and unpaid; that the plaintiff pay all costs in the district court and in this court; and that each party pay his or her own attorney's fees.

AFFIRMED AS MODIFIED.