HELEN V. JABLONSKI, APPELLANT AND CROSS-APPELLEE, V. EDWARD J. JABLONSKI, APPELLEE AND CROSS-APPELLANT.
114 N. W. 2d 1

Filed March 23, 1962. No. 35133.

*Buechler & Huber,* for appellant.

*John F. McCarthy,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action for divorce, instituted in the district court for Hall County by Helen V. Jablonski, plaintiff and appellant, hereinafter referred to as plaintiff, against Edward J. Jablonski, defendant and appellee, hereinafter referred to as defendant. A decree of divorce was duly granted to the plaintiff. The decree also adjudicated the rights of the parties with regard to a division of property. Both parties filed motions for a new trial. These were overruled. The plaintiff appeals and the defendant cross-appeals.

The parties were married in 1922. Two children, who are now adults, were born to the marriage. During the marriage the plaintiff and the defendant separated on several occasions. The next to the last separation culminated in an agreement, the effect of which was to transfer the real property of the parties to the plaintiff and to give the plaintiff the possession and control of the bank and building and loan accounts of the parties. This agreement is dated May 23, 1959. The parties separated June 21, 1960, and thereafter lived apart. The present action was filed March 28, 1961.

The only issue raised in the appeal is the division of the property. It is apparent that a divorce was in order and that it was properly granted to the plaintiff.

At the time of the trial, plaintiff was 59 years of age, the defendant 62. The plaintiff worked for 2 years near the end of the World War II at the Grand Island Ordnance Plant. This was her only away-from-home employment until after the separation. There is no question but that she is a frugal, hard-working woman who supplemented the family income by taking in roomers and in the early days of the marriage by taking in washing. The defendant had been steadily employed by the Union Pacific Railroad Company from 1927 to the time of the separation. He was also hard working and industrious and spent his unemployed hours on the properties acquired by the parties. Clearly, the accumulation of property by the parties during the marriage was the result of their joint efforts.

There is no evidence that the plaintiff has any problem of health or is unable to hold employment within her capabilities. She was employed in a cafeteria at the time of the trial. Her testimony was that she spent $13 for medical attention after the separation and that this included some minor surgery. After the separation defendant, who had been employed at Cheyenne, Wyoming, and was commuting back and forth from Grand Island over the weekend, gave up that employment. He returned to Grand Island for the same employer but as an extra or temporary employee. The trial court determined at a pretrial conference that he would soon be eligible for a pension of $135 per month. Plaintiff complains of defendant's action in leaving steady employment at Cheyenne to return to Grand Island. Defendant's physician testified that defendant has moderately severe high blood pressure and an arteriosclerotic heart disease, with irregularity of heart beat that interferes with the normal functions of his heart. As we view

the evidence, plaintiff's health is much better than that of the defendant.

Plaintiff stresses the fact that in 1922 she brought $500 cash and five cows, which were later sold for $300, into the marriage. Defendant at that time was heavily in debt and soon thereafter took bankruptcy. Early in 1923, the parties moved to Grand Island. They then, through their joint efforts, began the accumulation of the property they now possess. At the present time, they own a modern one and one-half story home containing eight rooms, and a modern two-story frame house containing three apartments and a double garage, all under the same roof. The property is located in an area of Grand Island zoned for business. The plaintiff valued the properties at $35,000. An exhibit produced by the defendant placed the value on them at $40,000. Although the property was in the plaintiff's name by the agreement referred to, the defendant had possession of it and collected the rents after the separation. It was stipulated that the gross amount collected was $1,690. After paying certain expenses, the defendant had a net rental income of $1,481.42.

At the time of trial, the plaintiff had possession of the following personal property:

| | |
|---|---|
| Home Federal Savings and Loan Association account | $7,400.58 |
| First National Bank account | 3,308.47 |
| Equitable Building and Loan Association account | 1,770.55 |
| Equitable Building and Loan Association account | 1,748.62 |
| A cashier's check, for | 1,100.00 |

The defendant at the time of the trial had a bank account, which is not further identified, in the amount of $291.

The parties also had household goods which were not described or valued. The defendant had a 1950 automobile, and each of the parties had some cash on hand which is not further considered herein.

The plaintiff's principal contention is that when the defendant conveyed the title to the real property to her, in accordance with the agreement, that this constituted a gift to her of all of his interest in the real estate, and that it became the plaintiff's sole property. Ignoring the obvious purpose of the agreement, we suggest that the property was accumulated and acquired during the marriage through the joint efforts of the parties, and that regardless of who holds the legal title, in a divorce action it is subject to the power of the court to adjust the respective property interests of the parties. Francil v. Francil, 153 Neb. 243, 44 N. W. 2d 315.

The court in determining the amount of alimony or in making a division of the property in a divorce case will consider the age of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them, and whether or not it was acquired by their joint efforts, and any other pertinent facts. Abel v. Abel, 168 Neb. 488, 96 N. W. 2d 276.

We point out that this rule provides no mathematical formula by which the property shall be divided or by which an alimony award can be exactly determined. Generally speaking, awards of this court in cases of this kind vary from one-third to one-half of the value of the property, depending on the facts and circumstances of the particular case. In the instant case, the plaintiff was given more than one-half of the property but still saw fit to appeal. This case is here for trial de novo upon the issues presented by the appeal. § 25-1925, R. R. S. 1943. As we view this record, we can find no reason why this case should be an exception to the rule we have generally applied in these cases.

The trial court found that there was $672.30 due in taxes on the real estate, and directed that this be paid by the plaintiff from the funds in her hands. The court then set off to the plaintiff the sum of $6,550, represent-

ing funds contributed by her or inherited during the marriage. It then allowed her one-half of the net rents, amounting to $740.71, as well as $1,800 in living expenses during the period of the separation. In this respect, it should be noted that the court made no adjustments of the withdrawals made by the plaintiff from the savings accounts of the parties nor considered her earnings subsequent to the separation. The balance of the cash on hand was then divided equally between the parties. With reference to the real property, the court determined its value to be $35,000, and gave the plaintiff a 30-day option to purchase the defendant's interest in the real estate by paying the defendant $17,500. If she did not exercise the option to purchase, the property was to be sold at public auction and the proceeds were to be divided equally between the parties.

Under the circumstances of this case, we conclude that, so far as possible, there should be an equal division of property between the parties.

At the time of the separation, the balance in the account with the Home Federal Savings and Loan Association was $9,606.69, and thereafter $193.89 was added to the account by accrued interest, so that during·the separation $2,400 was withdrawn from the account by the plaintiff. Of this amount, $1,100 went into the cashier's check. The Equitable Building and Loan Association account, of $1,770.55, had a balance at the time of the separation of $2,563.42. Thereafter, interest credits were added of $82.13, so that $875 was withdrawn from that account by the plaintiff during the separation.

Defendant during the marriage inherited $4,000 in bonds from his father's estate. He testified that these were turned over to his wife, cashed by her, and put into their accounts. This is denied by the plaintiff. Her testimony on all of the property is confused and unsatisfactory. The fact that the defendant over the years apparently let the plaintiff handle all financial matters tends to lend substance to his testimony. Plaintiff in-

herited $1,000 from the estate of her father and $4,827.55 from the estate of her mother. In adjusting these accounts, we set off the difference of $1,827.55 to the plaintiff as her separate funds. We have purposely ignored the contribution made by the plaintiff at the inception of the marital relationship, $75 of which may have been used as a down payment on their first property.

On one occasion the parties borrowed $6,000, and each took $3,000. As near as we can infer from the evidence, this was at a time when the defendant had had an accident and needed his share of the money for that purpose. The balance of $1,748.62 in an account with the Equitable Building and Loan Association is apparently what remains of the plaintiff's $3,000. We feel that this account should be set off to the plaintiff as her separate property, and it will be so handled.

Considering first the real property of the parties, we accept the trial court's determination that it should be divided equally between the parties and that the value should be fixed at $35,000 for the purposes of adjustment between the parties. We therefore determine that each of the parties shall have an undivided one-half interest in said real property and modify the findings of the trial court as set out hereafter. The plaintiff shall have the right for 30 days from the issuance of mandate herein to purchase defendant's interest in said real property for $17,500. If plaintiff fails to exercise the option within that period, the defendant shall have the right for 30 days thereafter to purchase the plaintiff's interest for $17,500. If neither party exercises the option to purchase, unless the parties agree otherwise, the real property shall be sold at public auction and the proceeds divided equally between the parties.

For the purposes of a division of the personal property of the parties, we determine their cash assets to be as follows:

Home Federal Savings and Loan Association $7,400.58
First National Bank                          3,308.47

| | |
|---|---:|
| Equitable Building and Loan Association | 1,770.55 |
| Equitable Building and Loan Association | 1,748.62 |
| Cashier's check | 1,100.00 |
| Defendant's bank balance | 291.00 |
| Net rentals collected during separation | 1,481.42 |

Total    $17,100.64

There were taxes due at the time of the trial of $672.30 which the plaintiff was directed to pay. These should be paid by the plaintiff if that has not already been done. If there is interest due on this item, it should be charged to the plaintiff. Deducting this amount leaves a balance of $16,428.34.

We have previously suggested that $1,827.55, and the Equitable Building and Loan Association account of $1,748.62, should be set off to the plaintiff as her sole and separate property. We make no allowance for the support of the plaintiff after the separation above the withdrawals made by her from the accounts of the parties. This leaves a balance as of the time of the trial, to be divided equally between the parties, of $12,852.17, with $6,426.08 to the defendant and $6,426.09 to the plaintiff. Except for the rentals and defendant's personal bank account, this property is under the control of the plaintiff. Deducting one-half of those two items, $1,481.42 and $291, or $886.21, from $6,426.08, there is due to the defendant the sum of $5,539.87, which amount the plaintiff is directed to pay over to him.

We affirm the action of the trial court in granting all household goods to the plaintiff, the automobile to the defendant, and permitting each party to retain any and all property now in his or her possession other than above stated.

The trial court entered a supplementary decree allowing the plaintiff $150 per month support, commencing July 21, 1961, pending the appeal herein, and providing as to the future division of the rents collected by the defendant. As we view this case, the defendant

should not be required to contribute to plaintiff's support pending this appeal, and therefore vacate said allowance. The supplemental decree is affirmed in all other particulars. We also determine that any interest accumulations subsequent to the trial in district court shall be the plaintiff's property. We further direct that the costs of this appeal shall be taxed to the plaintiff.

Plaintiff's withdrawals indicated she had advanced $300 to her attorneys. The trial court charged the defendant with the payment of an additional fee of $500. We affirm this allowance, but do not feel that plaintiff's attorneys are entitled to any further allowance in this court.

For the reasons set forth above, the judgment of the trial court is affirmed as modified herein.

AFFIRMED AS MODIFIED.

SIMMONS, C. J., participating on briefs.