PATRICIA L. JUNKER, APPELLEE, V. KENNETH JUNKER, APPELLANT.

198 N. W. 2d 189

Filed June 2, 1972. No. 38351.

W. O. Baldwin and Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellant.

Joseph F. Chilen and Dalke, Carlson & Thompson, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and BRODKEY, District Judge.

BRODKEY, District Judge.

This is an action for divorce, instituted in the district court for Jefferson County, by Patricia L. Junker, plaintiff and appellee, hereinafter referred to as plaintiff, against Kenneth Junker, defendant and appellant, hereinafter referred to as defendant. In its decree, the trial court found for the plaintiff on her petition and against the defendant on his cross-petition, and granted the plaintiff a divorce. The decree also adjudicated the rights of the parties with regard to a division of the property and awarded the plaintiff permanent alimony. Defendant has appealed to this court; but the granting

of the divorce is not assigned as error in the appeal, and both parties concede that ample evidence existed for the granting of the divorce to the plaintiff. The assignments of error by the defendant are directed to a claim of excessiveness of plaintiff's award in the division of the property of the parties, the amount of the allowance of permanent alimony, and the allowance of an excessive attorney's fee to plaintiff. Our court has held that a divorce action is triable de novo upon the issues presented by the appeal. Jablonski v. Jablonski, 173 Neb. 544, 114 N. W. 2d 1.

The parties to this action were married on November 25, 1961. Each of the parties had been previously married and each of them had a daughter by a former marriage. At the time of trial, plaintiff was 42 years of age, and defendant was 34 years of age. During the marriage, the defendant was employed as a car salesman and his income was based upon a salary; and, commencing in 1968, he also became a participant in a profit-sharing bonus plan, which was based upon the net operating profit of the dealership as computed at the end of the year. Total compensation paid to the defendant in 1969 amounted to $15,000.94, which included a bonus of $4,950. In 1970, his compensation amounted to $15,456.84 which included a bonus in the amount of $5,450. At the trial, his employer testified to the high quality of defendant's competence and ability as an executive of his company.

During the same period plaintiff had been variously employed in a florist shop and at the Fairbury Plumbing & Supply Company, and her anunal income varied between $2,700 per year and $3,600 per year; but at the time of the divorce she was unemployed, and lack of essential skills and training have handicapped her in her efforts to obtain employment. Evidence is somewhat contradictory as to the health of the respective parties, each claiming ill health in certain particulars. At the time of her marriage to the defendant, plaintiff

possessed various items of furniture and personal property together with the sum of $4,000 in cash, which she invested in the first home of the parties purchased after their marriage in the City of Fairbury. This home was later sold and the proceeds invested in a new home owned by the parties at the time of the trial. The evidence also shows that the defendant invested $3,000 in cash in the new home, and has made the payments on the mortgage on this home and paid the taxes for same since its acquisition. At the time of their marriage, the defendant possessed certain boats, an automobile, a limited amount of stock, and a modest bank account, together with guns and boating equipment. Since their marriage, the parties have acquired some additional household goods, furniture, and recreational equipment. In its decree entered in this case on July 29, 1971, and as later modified for the purpose of clarity on September 28, 1971, the trial court awarded to the plaintiff the residence of the parties, subject to the existing mortgage thereon, the household goods and furnishings with certain exceptions which it awarded to the defendant, an electric eye attachment for the garage, and a 1962 Oldsmobile, including an insurance claim for damage thereto. The court also awarded the plaintiff alimony totaling $9,000, payable at the rate of $150 per month, commencing August 1, 1971; and also awarded plaintiff an attorney's fee for her attorney in the amount of $1,000 in addition to the temporary attorney's fee of $75 previously allowed. The court awarded the defendant a house trailer and contents, boats, trailers, and boating equipment, camping equipment, his guns and related equipment, his hand and power tools, his stocks, bonds, and bank accounts, the policies of insurance, a 1957 Chevrolet station wagon, and other personal effects in his possession.

Evidence in the record supports the following values of the property involved herein as of the date of the trial. The original purchase price of the home of the

parties was $21,500 and certain improvements were made to the property after its acquisition. One real estate appraiser testified at the trial that the fair market value of the property in question was $26,500 and another appraiser gave its value as $23,500. We accept the median of these two figures and find that the value of the property at the time of the trial was $25,000. There was an outstanding mortgage indebtedness on the home at the time of the trial in the amount of $8,102.75, the defendant having reduced the balance of the mortgage by approximately $900 after the filing of the suit for divorce. In any event, it appears that the equity in the home at that time was $16,897.25. The plaintiff was also awarded the household goods, furnishings, and equipment in the home, which were variously estimated to be from $2,200 to $3,142. For the purposes of this case we have also adopted the median figure of $2,671 as the value of such furniture and equipment. The electric eye for the garage was valued at $150, and the Oldsmobile automobile, including the insurance claim for damages, was valued at $850. The total value of the property awarded plaintiff by the above figures was $20,568.25. With regard to the value of the property awarded to the defendant, evidence in the record substantiates a value of $1,500 on the house trailer and contents, $4,350 on the boats and trailers, $50 for sonar equipment, $200 for camping equipment, $1,233 for guns and equipment, $150 for hand and power tools, $50 for a Walkie-Talkie, $500 in value of stocks, $220 in value of government bonds, $225 in bank accounts, $450 for a 1957 Chevrolet station wagon, and $1,600 for the cash value of an insurance policy, or a total value of property awarded the defendant of $10,528. From the above figures, it appears the plaintiff was awarded approximately sixty-six percent of the total estate, and the defendant thirty-four percent. When we add to this the award of permanent alimony to the plaintiff of $9,000, the disparity becomes even more

pronounced. Keeping in mind the duration of the marriage of the parties of less than 10 years, the fact that no children were born of the marriage, and the additional fact that the evidence discloses the plaintiff was not without fault contributing to the dissolution of the marriage, this court is of the opinion that the award of the trial court was excessive and must be modified.

Factors to be considered in the division of property in a divorce case have been stated by this court in numerous opinions and need not be restated here. See, for example, Sanchez v. Sanchez, 186 Neb. 427, 183 N. W. 2d 743; Fry v. Fry, 186 Neb. 521, 184 N. W. 2d 636; Neeman v. Neeman, 183 Neb. 105, 158 N. W. 2d 236.

In Reckling v. Reckling, 172 Neb. 731, 111 N. W. 2d 627, this court stated: "The division of property and allowance of alimony in divorce actions are always to be determined by the facts in each case."

The rule for determining alimony or the division of property in a divorce action provides no mathematical formula by which such an award can be exactly determined. Generally speaking, awards of this court in cases of this kind vary from one-third to one-half of the value of the property involved, depending upon the facts and circumstances of the particular case. Kula v. Kula, 181 Neb. 531, 149 N. W. 2d 430; Loukota v. Loukota, 177 Neb. 355, 128 N. W. 2d 809; Jablonski v. Jablonski, 173 Neb. 544, 114 N. W. 2d 1.

In view of what we have stated above, we are of the opinion that the equity in the home of the parties awarded to the plaintiff by the decree of the trial court should be divided equally between the parties, and that the amount awarded to plaintiff as alimony should be reduced. We have heretofore found that the value of the home awarded to plaintiff was $25,000 and was subject to a mortgage balance of $8,102.75, and that the equity awarded to plaintiff was in the amount of $16,897.25 as of the date of the trial. We therefore determine that the plaintiff shall have the right for 30 days from the

issuance of the mandate herein to purchase defendant's equity and interest in said real property for $8,448.63, the plaintiff to assume or pay off the balance of the mortgage indebtedness, with adjustment to be made for any payments made on the mortgage since the date of the decree. If the plaintiff fails to exercise the option within that period, the defendant shall have the right for 30 days thereafter to purchase the plaintiff's interest on the same terms. If neither party exercises the option to purchase, unless the parties agree otherwise, the real property shall be sold at public auction and the net proceeds divided equally between the parties. We also modify the provisions of the decree in this case awarding the plaintiff alimony in the sum of $150 a month, commencing August 1, 1971, and continuing monthly to July 1, 1976, or a period of 60 months. We determine that the amount of the monthly payments should be reduced to $100 a month for said 60 month period or a total of $6,000, with adjustment to be made for excess in the amount of payments made to date.

Defendant also assigns as error in this case the award by the trial court of an attorney's fee to plaintiff's attorney, in the sum of $1,000, which defendant claims was excessive. It is difficult, if not impossible, to determine the amount of an attorney's fee in a divorce action such as this by "color matching" fees allowed in other cases solely on the basis of the amount of property involved. The amount of an award of an attorney's fee is largely within the discretion of the trial court. A reasonable attorney's fee in any proceeding is to be determined by the nature of the case, the amount involved in the controversy, the results obtained, and the services actually performed therein, including the length of time necessarily spent in the case, the care and diligence exhibited, and the character and standing of the attorneys concerned. Fotinos v. Fotinos, 184 Neb. 486, 168 N. W. 2d 698; Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508. The transcript in this case reveals that the attorneys for

the plaintiff in addition to participating in the trial itself, which lasted 2 days with 9 witnesses being called for plaintiff, also devoted a great amount of time and effort in the drafting of pleadings and lengthy interrogatories. They attended and participated in numerous court proceedings, including hearings for temporary allowances, and for a restraiinng order; also hearings in resistance to defendant's application for specific property, arguments on defendant's demurrer and motion to make more definite and certain, and a hearing for modification of the final decree; a motion for a new trial; and, presumably, a motion for temporary allowances pending the appeal to this court. In determining the fairness of an award for an attorney's fee in a case such as this, reference may properly be made to the Nebraska State Bar Association Minimum Fee Advisory Schedule adopted in 1970. Moreover, in Specht v. Specht, 148 Neb. 325, 27 N. W. 2d 390, this court stated: "'While trial courts and appellate courts equally are regarded as experts on the value of legal services, * * * a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will interfere only to correct a patent injustice, where the allowance is clearly excessive or insufficient, * * *.'" In this case we feel the trial court was in a better position to appraise the situation and we have concluded that the award for attorney's fees made to plaintiff in this case was not unreasonable or excessive. Plaintiff is awarded the sum of $250 for the services of her attorneys in this court.

The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.