MARY ZENKER, APPELLANT, v. WILLIAM M. ZENKER,
APPELLEE.

72 N. W. 2d 809

Filed November 4, 1955.   No. 33769.

*Halligan & Mullikin,* for appellant.

*E. H. Evans* and *Richard W. Satterfield,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff brings this action to secure the regis-

tration of a judgment obtained against the defendant in the district court for Denver County, Colorado, in the judgment record of the district court for Lincoln County, Nebraska, and for an order declaring it to be a valid and proper judgment against the defendant and a lien upon property owned by him in Lincoln County. The trial court found that the Colorado court did not have jurisdiction to render a decree of divorce and the money judgment rendered in connection therewith, and dismissed the action. The plaintiff appeals.

We are required to take notice of the fact that there is no proper bill of exceptions filed in this case. In this respect the record shows that plaintiff filed her notice of appeal on December 29, 1954. The initial period for reducing her exceptions to writing was 40 days from the date notice of appeal was filed. § 25-1140, R. R. S. 1943. The trial court extended the time an additional 40 days pursuant to section 25-1140.07, R. R. S. 1943. No further extension of time was applied for or granted by the Supreme Court as authorized by section 25-1140.07, R. R. S. 1943. The time for reducing the exceptions to writing therefore expired on March 19, 1955. Appellant had 10 days to serve the draft of the bill on the adverse party, as provided by section 25-1140.03, R. R. S. 1943. This period ended on March 29, 1955. The appellee then had 10 days to prepare proposed amendments and return the bill to the appellant, as authorized by section 25-1140.04, R. R. S. 1943. This period ended on April 8, 1955. The bill must be presented for settlement to the court, or the clerk of the district court in a proper case, within 10 days thereafter. § 25-1140.05, R. R. S. 1943. This period ended on Monday, April 18, 1955. The bill was not settled until April 21, 1955. There is no authority for settling a bill of exceptions more than 110 days after the filing of notice of appeal when an extension of 40 days only has been obtained for the purpose of reducing the exceptions to writing.

In Gernandt v. Beckwith, 160 Neb. 719, 71 N. W. 2d 303, this court stated: "This court will take judicial notice of the fact that the bill of exceptions was not settled within the time provided by statute, and therefore cannot be considered on this appeal." See, also, Bednar v. Bednar, 146 Neb. 726, 21 N. W. 2d 438. We are compelled to hold that there is no bill of exceptions before us which can be considered on this appeal.

In the absence of a bill of exceptions it will be presumed that issues of fact presented by the pleadings were established by the evidence and that they were correctly decided. In such a situation the only issue that will be considered on appeal to this court is the sufficiency of the pleadings to support the judgment. Goger v. Voecks, 156 Neb. 696, 57 N. W. 2d 621; Gernandt v. Beckwith, *supra.*

The petition alleges that in January 1952, the plaintiff instituted an action in the district court for Denver County, Colorado, against the defendant, the object and prayer of which was to obtain a divorce and a proper division of the property owned by the parties. The petition further alleges that personal service of summons was had on the defendant in Denver County, Colorado, but that defendant failed to appear, and on March 7, 1952, an interlocutory decree was entered allowing plaintiff $145 per month as temporary alimony and $250 as attorney's fees. It is further alleged that, after proper notice to the defendant, a final hearing was held on November 19, 1952, at which a judgment was rendered against the defendant in the sum of $15,669.20, the amount the court found to be plaintiff's share of the jointly accumulated property. The judgment, a copy of which is attached to the petition, shows that defendant was served with summons but had not appeared or answered, that evidence was taken, and the judgment rendered. The prayer of the petition is that the court order the registration of this judgment in Lincoln County and that it be declared to be valid and

a lien on defendant's property in that county.

The answer alleges that plaintiff and defendant are husband and wife, that the decree of divorce and judgment procured in Colorado are null and void for the reason that plaintiff never acquired a bona fide domicile in Colorado, that plaintiff at the time of the commencement of the divorce proceeding in Colorado was domiciled in Lincoln County, Nebraska, and that the Colorado court therefore never obtained jurisdiction to grant a valid divorce in that state. The answer alleges further that the statutes of Colorado require a bona fide residence for at least one year in that state prior to the commencement of a divorce proceeding, that plaintiff never had such a domicile in Colorado, and that the court in Colorado therefore never attained jurisdiction to hear and adjudicate plaintiff's petition for a divorce. The defendant admits that he was personally served with summons in Denver County, Colorado, but alleges that such purported service was void for the reason that his temporary presence in Denver County was by reason of enticement thereto by the fraudulent representations of plaintiff that his presence there was required to join in selling and conveying certain real estate in Denver when plaintiff had no intention of so doing, and that such representations were falsely made to procure the presence of the defendant in Denver County for the sole purpose of serving a summons upon him in an action already commenced and of which defendant had no previous knowledge. The answer alleges that the Colorado court entered the decree and judgment on plaintiff's evidence that she was domiciled in Colorado, which was false and fraudulent, and that, in fact, the Colorado court did not have jurisdiction of the subject matter nor of the person of the defendant. The prayer of the answer is that plaintiff's action be dismissed, that the court deny registration of such purported judgment, and that any registration theretofore made be held for naught.

In her reply the plaintiff alleges that defendant was personally served with summons in Denver County, Colorado, made no objection to the jurisdiction of that court, and is now estopped from challenging collaterally the jurisdiction of the district court for Denver County, Colorado, to adjudicate the cause.

The question of the right of a spouse to attack collaterally a decree of divorce in a sister state was recently before this court in the case of Yost v. Yost, *ante* p. 164, 72 N. W. 2d 689. In that case we said: A judgment refusing to accord full faith and credit to the divorce decree of a sister state on the ground that no bona fide domicile was acquired there does not offend the full faith and credit clause of the federal Constitution where it appears that proper weight was given to the claims of power by the court of the sister state; that the burden of disproving a bona fide domicile in the sister state was properly placed upon the party challenging the validity of the divorce decree; that such issue of fact was determined by appropriate legal procedure; and that the finding as to the absence of a bona fide domicile in the sister state is amply supported by the evidence. This is so even if in the record of the court rendering the divorce decree in the sister state there is warrant for its finding that it had jurisdiction. See, also, Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366. In other words, a decree of divorce rendered in another state may be collaterally attacked by showing that the court was without jurisdiction, either of the subject matter of the suit or of the person of the defendant, without violating the full faith and credit clause of the federal Constitution. Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901.

There being no bill of exceptions which we can consider, it will be presumed that the issues of fact presented by the defendant's answer were established by the evidence. This being true, we are required to hold

that the evidence shows that plaintiff did not have a bona fide domicile in Colorado at the time she commenced her suit for a divorce.

The defendant admits by his answer and plaintiff alleges in her reply that personal service of summons was had on the defendant in Denver County, Colorado, and plaintiff alleges further that the defendant is now estopped from challenging collaterally the jurisdiction of the Colorado court to adjudicate the cause. It is not alleged in the pleadings that defendant made an appearance or in any manner contested the divorce proceeding in Colorado. In fact, it is not alleged in the pleadings that defendant ever appeared or contested any proceeding in the Colorado court which brought about the judgment directly involved in this litigation. It is necessary, therefore, to determine the effect, if any, that the personal service of summons had on the defendant in Denver County, Colorado, had on the validity of the divorce decree, and the necessity for giving it full faith and credit in this state.

We point out that the Nebraska Uniform Divorce Recognition Act provides in part: "A divorce from the bonds of matrimony obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced." § 42-341, R. R. S. 1943. For the purposes of the present case we are required to hold that the allegation in the answer that the parties to the marriage were both domiciled in Nebraska when plaintiff commenced her suit in Colorado is sustained by the evidence. The public policy of this state is, as declared by the foregoing legislative enactment, that a foreign divorce will not be recognized if both parties to the marriage, as here found, are domiciled in this state at the time the proceeding for the foreign divorce was commenced. The question therefore is: Does the statute, section 42-341, R. R. S. 1943, contravene the full faith and credit

clause of the federal Constitution in such a case as we have before us?

In Williams v. North Carolina, *supra*, it was clearly recognized that jurisdiction over the marriage status depends upon the domicile of one of the parties being in the state where the divorce is granted, and that the full faith and credit clause does not require the state of original domicile to accept as conclusive the determination of the court of the state granting the divorce that a change of domicile has been effected. This rule appears to have been modified to some extent by later cases. We shall briefly consider some of these subsequent holdings.

In Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429, 1 A. L. R. 2d 1355, it was held that full faith and credit must be given to a decree of divorce in a sister state where the defendant, on receiving notice by mail of the pendency of the suit, retained counsel, entered a general appearance, and filed an answer denying the allegations of the complaint, including those as to complainant's domicile. The defendant appeared personally at the trial to testify with reference to the custody of the children. The divorce decree was held to be res judicata and that the full faith and credit clause outweighed the interest of the domiciliary state in the regulation of the marital relation of its citizens.

In Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451, 1 A. L. R. 2d 1376, it was held that full faith and credit must be given to a decree of divorce in a sister state where the defendant wife filed an answer admitting as true the allegations of the husband's complaint as to his Nevada residence and filed a cross-complaint for a divorce. At the trial both parties appeared personally and were represented by counsel. The wife raised no question as to the husband's domicile in Nevada. The decree of divorce was held to be res judicata and entitled to full faith and credit in the state in which the wife was domiciled.

In Johnson v. Muelberger, 340 U. S. 581, 71 S. Ct. 474, 95 L. Ed. 552, the court held in a case where a defendant in a foreign divorce proceeding appeared and answered on the merits, and had full opportunity to contest the jurisdictional issues, that full faith and credit should be given to the foreign decree by the state of original domicile. In the opinion, however, the court said: "It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state." It will be noted that the holding that one personally served, but who did not otherwise appear, may not collaterally attack the decree in the state of the original domicile, goes beyond the facts in the case before the court. Whether or not personal service, without any appearance of any kind being made, is sufficient of itself to require full faith and credit by the state of original domicile was not the issue before the court.

In Cook v. Cook, 342 U. S. 126, 72 S. Ct. 157, 96 L. Ed. 146, the court said: "If the defendant spouse appeared in the Florida proceedings and contested the issue of the wife's domicile (Sherrer v. Sherrer, 334 U. S. 343) or appeared and admitted her Florida domicile (Coe v. Coe, 334 U. S. 378) or was personally served in the divorce state (Johnson v. Muelberger, 340 U. S. 581, 587), he would be barred from attacking the decree collaterally; and so would a stranger to the Florida proceedings, such as respondent, unless Florida applies a less strict rule of res judicata to the second husband than it does to the first."

While it appears that the Supreme Court of the United States has not determined, since the second Williams

case at least, that personal service on a defendant within the jurisdiction of the court granting the foreign divorce is sufficient, of itself, to require full faith and credit, that result is plainly indicated by the foregoing cases. Consequently the rule as announced by the United States Supreme Court is: Even though the nonresident defendant in a divorce proceeding has not made a personal appearance, the divorce decree is entitled to full faith and credit where the defendant was personally served in the jurisdiction where the divorce was granted. See, also, Sutton v. Leib, 342 U. S. 402, 72 S. Ct. 398, 96 L. Ed. 448; Rice v. Rice, 336 U. S. 674, 69 S. Ct. 751, 93 L. Ed. 957.

We think it is clear therefore that the decree of divorce and the judgment growing out of it determining the property rights of the parties in their joint property, rendered in Colorado, is entitled to full faith and credit, under the present holding of the United States Supreme Court, unless the issue of fraud in procuring personal service of summons in Colorado is available to the defendant.

The defendant alleges that the service of a summons on him personally in Denver County, Colorado, was void for the reason that his temporary presence there was due to his being enticed there by the fraudulent representations of the plaintiff that his presence was required to complete a sale and transfer of certain real property. He alleges that after being enticed within the jurisdiction of the court he was served with a summons in a divorce suit already commenced and about which he had no knowledge. Under the state of the present record we are required to presume that evidence of these facts had support in the record and that they were properly decided by the trial court. The question presented is whether or not a finding that such allegations are true has the effect of invalidating the personal service and, if so, may it be used to collaterally attack the judgment in this state.

The general rule is: "Personal service of process, if procured by fraud, trickery, or artifice is not sufficient to give a court jurisdiction over the person thus served, and service will be set aside upon proper application. Relief is accorded in such cases not because, by reason of the fraud, the court did not get jurisdiction of the person of the defendant by the service, but on the ground that the court will not exercise its jurisdiction in favor of one who has obtained service of his summons by unlawful means. Thus, if a person resident outside the jurisdiction of the court and the reach of its process is inveigled, enticed, or induced, by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible, to come within the jurisdiction of the court for the purpose of obtaining service of process on him in an action brought against him in such court, process served upon him through such improper means is invalid, and upon proof of such fact the court will, on motion, set it aside." 42 Am. Jur., Process, § 35, p. 32. We are required to assume that the evidence sustains the finding of the trial court that service of personal summons in the Colorado court was fraudulently obtained. The issue is whether or not it is available to the defendant in this action.

For many years it was generally held with the approval of the Supreme Court of the United States that Article IV, section 1, Constitution of the United States, commonly called the full faith and credit clause, did not prevent the courts of the state of the marital domicile from determining whether or not a bona fide domicile had been established in the state granting a divorce and, if not, that such state could properly refuse full faith and credit. The right of the state of the actual domicile of the parties to control the domestic relations of its own inhabitants was given precedence over the attempt of any other state to interfere therewith. The right of the state to regulate divorce, the care and custody of children of the marriage, the prop-

erty interests of the parties in their joint property, and its own interest in maintaining the dignity of the marriage relation and the resulting family ties, was held to be such that one or both of them could not go into another state and, by false evidence of domicile, procure a decree which their own state was compelled to accept as valid. It stands to reason that if both parties were domiciled in Nebraska, neither could be domiciled in Colorado, and jurisdiction of the divorce suit could not exist in the latter state. Commencing with Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L. Ed. 26, 118 A. L. R. 1518, and subsequently in the Sherrer, Coe, Johnson, and Cook cases herein cited, the long-established principle affirmed in the second Williams case was seriously undermined. This becomes a serious departure in view of the fact that the Supreme Court of the United States is the final arbiter to determine when full faith and credit must be accorded a judgment rendered by a sister state.

The nature of a divorce proceeding becomes of great importance in determining the questions here presented. It is not a transitory action in which a defendant may be sued in any jurisdiction in which personal service of process may be had upon him. It is in some respects sui generis. The jurisdiction of a court to decree a divorce is based on two fundamental considerations which must exist before it can lawfully act: (1) It must have before it a party who is actually domiciled within its jurisdiction; and (2) it must have jurisdiction of the defendant by procedural due process. If either of these primary elements of jurisdiction are absent it has no power to act and any order or decree entered is a nullity. It is fundamental, as we see it, that a void decree is void for all purposes and may be collaterally attacked. A void decree is not res judicata of anything. See State ex rel. Kennedy v. Broatch, 68 Neb. 687, 94 N. W. 1016, 110 Am. S. R. 477, wherein we said: "A 'right, question or fact' distinctly put in issue and directly deter-

mined by a court of competent jurisdiction as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies, * * *." See, also, Russell v. Place, 94 U. S. 606, 24 L. Ed. 214. It is possible, of course, in a proper case, that one may estop himself and those in privity with him, from attacking a void decree resulting from his own fraud. 19 Am. Jur., Estoppel, § 77, p. 716; Simmons v. Simmons, 57 App. D. C. 216, 19 F. 2d 690, 54 A. L. R. 75. But an estoppel of a party will not estop the state of the actual domicile of the parties from asserting the want of jurisdiction of the sister state in entering the decree, when it undertakes to maintain the dignity of the marriage relation by prosecutions for bigamous or adulterous cohabitation. While service of summons personally on a defendant, or an appearance, or a contest of the issues, may constitute full compliance with procedural due process and give jurisdiction over the person, it cannot give jurisdiction of the subject matter to a court where domicile within the state is absolutely essential to its existence. The two jurisdictional elements are of equal rank and a compliance with one does not supply a defect in the other. We share the views of the court in Staedler v. Staedler, 6 N. J. 380, 78 A. 2d 896, 28 A. L. R. 2d 1291, wherein it is said: "Jurisdiction depends upon the existence of basic facts and a bona fide finding that the necessary facts actually exist, and where they do not exist it cannot be conferred upon any court anywhere by consent of the parties or by fraud. It presupposes a bona fide examination by a court of competent jurisdiction of such facts before any judgment can be entered by such court."

In Shepherd v. Ward, 5 N. J. 92, 74 A. 2d 279, the court used the following language in dealing with a similar situation: "Matrimonial suits are in some respects sui generis. Their reflex consequences are rooted deeply in the home, in society and in human relations generally. They ought not be permitted to take on the aspects of

a game wherein wits, speed, daring and finesse prevail over elemental right and justice. Divorces and their incidents have become little less than a national scandal. The efforts of most of the states to maintain equilibrium in the marital status and responsibilities of their domiciliaries are shockingly thwarted by the liberal provisions of a few jurisdictions, known as 'easy divorce' states, and by the facility with which, under prevailing conditions, the laws of more conservative jurisdictions, such as our own state, are mocked. Let us consider the philosophy of the instant case:—The wife, without justification, departs to another jurisdiction long enough to get a decree which by no skill or deception could be got here and forthwith returns with impudent effrontery to bring suit, relying upon the argument that the due faith and credit which are owing to the decree of another state should be linked with our own laws enacted to protect a deserving wife against an erring husband. Upon that reasoning she demands that the husband, having been wrongfully subjected to a broken home, shall further respond in considerable and continued maintenance payments. Thus, in absentia, one of our citizens, blameless by our standards, is gripped by the legal machinery of a state where he never has been and never expects to be, against which and against the citizens of which he had never sinned, where he is not known, and therefore where the asset of a life well lived and of a merited place in the community loses its value. The suit is instituted in a far state, going to which on an errand of this sort would of itself be an unreasonable burden; but in addition the husband does not dare to appear there either in person or by attorney because in so doing he yields to the jurisdiction. The inequity and the iniquity of such a situation should, if possible, be relieved."

In the case before us, both of the primary elements of jurisdiction are, under the state of the record, conclusively established to have been fraudulent. Domicile

in the state granting the divorce was established by false evidence on the part of the plaintiff. The service of summons personally on the defendant was accomplished by trickery and deceit by inveigling the defendant into the jurisdiction of the court by false representations for the purpose of serving a summons on him. Fraud pervades the whole decree from the inception of the litigation. To give full faith and credit to such a decree is equivalent to permitting one to plead his own fraud as a defense to the attack on the foreign judgment.

A foreign state which undertakes to enter a decree of divorce involving parties who are citizens of another state must have something upon which to act. In a divorce suit that "something" is domicile. If a party has established a bona fide domicile in the state where the divorce is sought, the power to act is established and the resulting decree is entitled to full faith and credit. If the domicile remains in the state of original domicile, no power to act exists. Jurisdiction in such a case cannot be obtained by consent. 14 Am. Jur., Courts, § 184, p. 380. In Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366, the court disposed of that question in the following language: "The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it contrary to the law of the domicil. The proposition relied upon, if maintained, would involve this contradiction in terms: that marriage may not be dissolved by the consent of the parties, but that they can, by their consent, accomplish the dissolution of the marriage tie by appearing in a court foreign to their domicil and wholly wanting in jurisidiction, and may subsequently compel the courts of the domicil to give effect to such judgment despite the prohibitions of the law of the domicil and the rule of public policy by which it is enforced." For the same reasons, jurisdiction of the subject matter cannot be obtained by service of summons personally, by appearance, by contest, or by fraud going

to the matter of jurisdiction. Irrespective of the fact that the Supreme Court of the United States has not specifically overruled this principle, it appears to have departed from it in some of the cases herein cited. The reasoning behind the principle, however, seems compelling to us. While it is true that jurisdiction may be obtained over the person of a defendant by a lawful service of process, his appearance, or by consent, jurisdiction of the subject matter may not be so obtained. And, ordinarily, an attack upon a summons fraudulently served must be made in the court from which the process was issued, or be treated as a waiver. That rule applies only in a case where the court has jurisdiction of the subject matter. Where the latter does not exist, the court has no power to make any order at all and consequently the attack upon the validity of the process may be collaterally made. The confusion in the cases decided by the Supreme Court of the United States appears to have resulted from applying the same rules to jurisdiction of the subject matter as are ordinarily applied in determining questions of jurisdiction over the person, when they are in fact wholly different. Jurisdiction in the one case cannot be obtained by personal service of summons, appearance, or contest, while in the case of obtaining jurisdiction over the person, they may confer such jurisdiction. In the case before us, a bona fide domicile was not established in Colorado and the service of summons personally was obtained by fraud. To hold that full faith and credit must be accorded to a decree based on such a record is to say that the full faith and credit clause of the federal Constitution may be used to protect fraud, trickery, and deceit and to punish the innocent, the wronged, and the law-abiding. No such result was ever intended by that clause. It was never contemplated that a collusive appearance or a token defense should raise the resulting decree to the dignity required to compel its acceptance in the state of actual domicile and thereby destroy the public policy

of that state by the fraud and deceit practiced in another.

What reason can possibly exist for such an interpretation of the full faith and credit clause in this type of case? Can it be for the purpose of protecting the fundamental rights of the person seeking the foreign divorce or those of a conniving spouse? We submit that it is not. One who becomes disgruntled by the restraints imposed by the public policy of the state of his domicile and seeks the benefit of the less rigorous divorce laws of a foreign state, should be required to assume the risks of such a venture and, if he fails when such decree is attacked, upon a return to the state of his original domicile, to successfully withstand the collateral assault made upon it, we can see no reason, equitable or otherwise, why he should be protected from the results of his own fraudulent conduct.

We concede the right of the Supreme Court of the United States to determine when full faith and credit shall be given to the decrees of a sister state. We concede the power of that court to interpret the full faith and credit clause as it did in the Davis, Sherrer, Coe, Johnson, and Cook cases, even though we question its assumed right to do so. We conclude that the latter cases each cover a very narrow situation, and, because of their radical departure from the prior decisions of the court which they do not purport to overrule, they will not be applied to situations other than those which they specifically decide. We follow the precedent set by the Wisconsin court when it said in a similar case: "Under these circumstances we do not consider that the federal constitution nor the decisions interpreting it have called upon Wisconsin to surrender to the courts of another state this remnant of its historic right to determine for itself the marital status of its own residents, and we shall not surrender it until higher authority, speaking on the instant facts or on others which are indistinguishable, requires us to do so." Davis v. Davis, 259 Wis. 1, 47 N. W. 2d 338.

The Supreme Court of the United. States has never held, so far as we have been able to determine, that full faith and credit must be given to a divorce decree of a sister state where jurisdiction of the subject matter (domicile) and procedural due process (personal service of summons) have each been obtained by fraud. Consequently we hold that the Colorado decree is subject to collateral attack and, under the state of the record, it is not entitled to full faith and credit in this state. The trial court having in effect so found, the judgment is affirmed.

AFFIRMED.