BLANCHE E. WEBER, APPELLEE AND CROSS-APPELLANT, V. LEROY WARING WEBER, APPELLANT AND CROSS-APPELLEE.

265 N. W. 2d 436

Filed April 19, 1978. No. 41416.

Warren C. Schrempp and Richard E. Shugrue of Schrempp & McQuade, for appellant.

Dixon G. Adams, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Blanche Weber, petitioner and appellee herein, filed this divorce action in the District Court for Sarpy County on September 19, 1975, seeking to dissolve her marriage to LeRoy "Jim" Weber, respondent and appellant herein, on the ground that the marriage was irretrievably broken. Petitioner

prayed, in part, for an award of alimony and an equitable distribution of property acquired during the marriage. The respondent appeared specially, objecting to the jurisdiction of the court on the grounds that the parties had been divorced in the Dominican Republic on January 13, 1975, and that they had executed a valid property settlement in conjunction with the foreign divorce.

The District Court concluded that it should not recognize the Dominican Republic divorce decree, and that the property settlement executed by the parties in conjunction with that decree was not binding on the petitioner because it was unconscionable. The trial court dissolved the marriage of the parties, and awarded the petitioner the family residence, an automobile, personal property in her possession, and the sum of $160,000 in lieu of a property settlement. The money judgment, with eight percent interest thereon, was ordered to be paid at the rate of $8,000 per year, although the respondent was granted the right to accelerate payments. The petitioner also received an award of $2,450 for attorney's fees.

The respondent has appealed to this court, contending that the District Court erred in (1) failing to recognize the foreign divorce decree; (2) finding that the property settlement executed by the parties was unconscionable; (3) failing to hold sections 42-341 and 42-366, R. R. S. 1943, unconstitutional; and (4) awarding the petitioner a disproportionate share of the property. The petitioner has cross-appealed, contending that the award of attorney's fees was inadequate. We affirm the judgment of the District Court, but increase the amount of attorney's fees awarded plaintiff.

The parties were married in 1950, when both were students, and neither brought any significant amount of money or property to the marriage. Between 1951 and 1958, the wife worked as a nurse, and the husband was in the Air Force and attended law

school.  During this period of time, both contributed income to the marriage, and the husband's contributions were equal to, or exceeded, the contributions of the wife.  The wife worked as a nurse until 1960, by which time the husband had established a law practice.  The wife then retired from nursing to care for their two children and home.  She resumed her career in nursing in 1971, and now earns an annual gross income of approximately $11,000.

The husband has had a successful law practice since 1960, and during the course of the marriage handled the family finances.  He made sound investments in real property and stocks, and by 1975 had built up a sizable marital estate.  The total value of the personal and real property, the cash value of insurance policies, and stocks acquired by the parties during the marriage was disputed at trial.  Evidence presented by the husband indicated that the value of the marital estate was between $345,000 and $390,000, while the wife's evidence indicated that the value was approximately $500,000.  The trial court found that the value was in excess of $449,000.

Marital difficulties arose as early as 1970.  In January 1975, the parties agreed that they should be divorced, and the husband suggested that a foreign divorce be obtained to avoid the "notoriety" of local divorce proceedings.  The husband secured a "power of attorney" form from a Miami attorney for use in divorce proceedings in the Dominican Republic and the wife signed it, although she never at any time before or after those proceedings met the attorney or spoke with him.  The husband also drafted a property settlement agreement, dated January 7, 1975.  Under this agreement, the wife was to receive various household furnishings, a 1969 automobile, and gross alimony in the amount of $12,100, payable at the rate $100 per month.  She was also to receive a life estate in the family residence.  The husband agreed to pay child support in the amount

of $75 per month for each of two children, the custody of whom was to be awarded to the wife. All other property acquired during the course of the marriage was to be the property of the husband. The wife signed the agreement, without consultation with or advice of counsel.

The husband then traveled to the Dominican Republic for 2 days and secured a divorce in that country. In the Dominican Republic decree it is stated that the parties expressly submitted to the jurisdiction of the court, and that the wife appeared before the court by her attorney. The decree also recites that both the husband and wife were domiciliaries of Nebraska. The basis of the foreign decree as set forth therein, was "incompatibility of temperaments." It is important to note the decree further expressly provided that the property settlement agreement executed by the parties was not affected nor modified by the judgment, and would survive in the form established by the laws of the place where the document was signed.

The husband then moved out of the family residence, and made alimony and support payments as provided in the property settlement agreement. He also had the wife sign quitclaim deeds to the real property granted to him under the agreement. At no time during this time period did the wife obtain the advice of an attorney. However, in September 1975 she did consult counsel, and this action was filed immediately thereafter.

We first consider respondent's contention that the trial court erred in failing to recognize the Dominican Republic divorce decree. Section 42-341, R. R. S. 1943, provides: "A divorce from the bonds of matrimony obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced." It is clear that the foreign divorce in this case falls

within the provisions of section 42-341, R. R. S. 1943, as it is undisputed that the parties were Nebraska domiciliaries at the time the Dominican Republic proceeding was commenced.

Respondent contends, however, that section 42-341, R. R. S. 1943, is unconstitutional because it violates his right to due process and equal protection of the laws. In summary, he argues that the statutory provision is overbroad, arbitrary, and capricious, and denies him fundamental freedom of choice in matters relating to marriage and family life. Respondent relies on cases such as Cleveland Board of Education v. LaFleur, 414 U. S. 632, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974); Eisenstadt v. Baird, 405 U. S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); and Griswold v. Connecticut, 381 U. S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). These cases, however, do not deal with, or discuss, the constitutional validity of a statutory provision like section 42-341, R. R. S. 1943, nor do they, or any other cases, support respondent's contention that he has a fundamental right to have a foreign divorce decree recognized by the courts of this state when both he and his spouse are Nebraska domiciliaries.

The area of domestic relations is one that has long been regarded as a virtually exclusive province of the states, which have the right to prescribe the conditions upon which the marriage relation between their own citizens shall be created and dissolved. See Sosna v. Iowa, 419 U. S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975). The state is impliedly a party to the marriage contract, and has an interest in the continuance and dissolution of the marital relation. Binger v. Binger, 158 Neb. 444, 63 N. W. 2d 784 (1954); Dudgeon v. Dudgeon, 142 Neb. 82, 5 N. W. 2d 133 (1942); Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207 (1942). Public policy concerning divorce and its incidents is a matter for the Legislature, not the courts, to decide. Detter v. Erpelding,

176 Neb. 600, 126 N. W. 2d 827 (1964). We believe it apparent that the Legislature may properly deny recognition of foreign divorce decrees when the parties are domiciliaries of this state in order to promote its policy of preventing fraud, deceit, and artifice in the procuring of divorces, and of protecting the interests of Nebraska domiciliaries from being compromised in quick foreign divorce proceedings. See, Yost v. Yost, 161 Neb. 164, 72 N. W. 2d 689 (1955); Zenker v. Zenker, 161 Neb. 200, 72 N. W. 2d 809 (1955). Section 42-341, R. R. S. 1943, bears a rational relation to valid state purposes, and respondent has cited no case which holds that a statutory provision like section 42-341, R. R. S. 1943, is unconstitutional on grounds that it violates due process of law or equal protection of the laws. His contention is clearly without merit.

Respondent next contends that despite section 42-341, R. R. S. 1943, we should recognize the Dominican Republic divorce decree as a matter of comity. Comity is neither a matter of absolute obligation nor mere courtesy. As a general rule, a foreign judgment will not be given effect under the principles of comity if opposed to the settled public policy of this state. See, Green Finance Co. v. Becker, 151 Neb. 479, 37 N. W. 2d 794 (1949); Kindler v. Kindler, 169 Neb. 153, 98 N. W. 2d 881 (1959).

With the exception of New York, the rule adopted by other states is that "bilateral" divorce decrees, rendered upon the physical presence of the petitioning spouse in the divorcing nation, and the voluntary appearance of the respondent spouse through an attorney, are not entitled to domestic recognition under the principles of comity. See Annotation, Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of the Parties, 13 A. L. R. 3d, § 3 (d), at p. 1433. Regardless of the validity of the decree in the nation awarding it, courts in this country have gen-

erally not recognized a foreign judgment of divorce unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good-faith domiciliary in the foreign nation at the time the decree was rendered. Annotation, 13 A. L. R. 3d, § 3 (a), at p. 1425.

In enacting section 42-341, R. R. S. 1943, the Legislature of this state has made clear its policy of refusing to recognize quick foreign divorces by domiciliaries of this state. Yost v. Yost, *supra*. In view of this legislative declaration of public policy, we, as well as other courts, decline to extend comity to a divorce obtained in a foreign country when the parties are Nebraska domiciliaries. See In re Estate of Steffke, 65 Wis. 2d 199, 222 N. W. 2d 628 (1974).

Respondent next contends that the petitioner should be estopped from attacking the Dominican Republic decree because she voluntarily submitted to the jurisdiction of the foreign court, and accepted the benefits of the foreign decree. In a proper case, a person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him or her to do so. See, Zenker v. Zenker, *supra*; Restatement, Conflict of Laws 2d, § 74, at p. 224. Such inequity may exist when action has been taken in reliance on the divorce, or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party. Restatement, Conflict of Laws 2d, § 74, Comment b, at p. 225. In cases involving foreign divorce decrees, as in other situations, however, the application of the principles of equitable estoppel cannot be subjected to fixed and settled rules of universal application, but rests largely on the facts and circumstances of each particular case. See Luther v. Sohl, 186 Neb. 119, 181 N. W. 2d 268 (1970).

As respondent notes, it is true that the petitioner in this case was aware that the foreign divorce decree was being obtained, and she took part in the Domini-

can Republic proceedings to the extent of granting a power of attorney to local counsel. An important factor in this case, however, is that the respondent, an attorney, was the dominant figure in obtaining the foreign decree, and he persuaded the petitioner to act when he knew she was without the aid of counsel, and was not knowledgeable with respect to applicable law and her rights thereunder. The record also reveals that the petitioner was not fully aware of the amount of property acquired by the parties since the marriage, as the respondent controlled the family finances to the exclusion of the petitioner. Finally, the record does not reflect that either party, in reliance on the foreign divorce, altered his or her position in such a manner that it would now be inequitable to permit the petitioner to challenge the decree. Under the circumstances of this particular case, we believe, the trial court was correct in its finding that the petitioner should not be estopped from attacking the Dominican Republic decree. See Warrender v. Warrender, 79 N. J. Super. 114, 190 A. 2d 684 (1963), affirmed, 42 N. J. 287, 200 A. 2d 123 (1964), a case with facts analogous to those in the present case, where the court refused to apply the principles of estoppel.

The next issue presented is whether the trial court erred in concluding that the property settlement agreement executed by the parties was unconscionable and therefore not binding on the petitioner. Section 42-366, R. R. S. 1943, provides that parties to a marriage may enter into a written property settlement agreement to promote the amicable settlement of disputes attendant upon their separation or the dissolution of their marriage. Subsection (2) of section 42-366, R. R. S. 1943, provides: "In a proceeding for dissolution of marriage or for legal separation, the terms of the agreement, * * * shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and

any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." Under subsection (3) of section 42-366, R. R. S. 1943, if the court finds that the agreement is unconscionable, it may make orders for the disposition of property, support and maintenance.

Respondent contends that subsection (2) of section 42-366, R. R. S. 1943, is unconstitutional because the term "unconscionable" is so "ethereal that it defies definition," and because the statute provides no standards by which such an agreement may be judged. Respondent also argues that the statutory provision violates the rights of the parties to a contract.

Neither contention has merit. The term "unconscionable" as used in statutes like section 42-366, R. R. S. 1943, has been interpreted as meaning "manifestly unfair or inequitable." See Wilhoit v. Wilhoit, 506 S. W. 2d 511 (Ky., 1974). As we stated in Prochazka v. Prochazka, 198 Neb. 525, 253 N. W. 2d 407 (1977), in discussing the applicability of section 42-366, R. R. S. 1943, to a property settlement agreement, the question is whether the evidence shows "any circumstance, economic or otherwise, which operates to render the effect of the agreement unjust to either party or obviously excessive in respect to benefits or burdens on either side." The term unconscionable is not vague, nor is the Legislature required to set forth specific standards of application since the question of whether an agreement is manifestly unfair or inequitable depends on the particular circumstances of each case.

The respondent cites no authorities in support of his argument that section 42-366, R. R. S. 1943, violates the rights of the parties to enter into a contract and to rely upon it. The statutory provision merely establishes that an unconscionable agreement is not binding on the trial court; it does not

prohibit parties from entering into a contract which is not manifestly unfair or inequitable. As already noted above, the state has an interest in the dissolution of the marital relation, and therefore the Legislature may properly require that property settlements be "conscionable."

There can be little doubt that the property settlement agreement in this case was unconscionable. Under the agreement, the petitioner received only a life estate in the family residence, a 1969 automobile, and gross alimony in the amount of $12,100. As will be discussed hereinafter, the marital estate had a value of approximately $400,000 to $450,000. The petitioner not only made contributions to the marriage as a homemaker, but contributed her entire income during 12 years of the marriage. Also relevant is the fact that the respondent drafted the agreement, and was acting from a superior position of knowledge with respect to the law and the value of the marital estate, while the petitioner had neither the benefit of counsel nor knowledge of her legal rights and the value of property acquired during the marriage. Under the particular circumstances of this case, the agreement was manifestly unfair and inequitable.

Respondent's final contention is that the District Court awarded a disproportionate share of the marital estate to the petitioner. His primary argument is that the marital estate was acquired almost entirely through his efforts and as a result of his contributions, and that therefore the petitioner is not entitled to share in any significant portion of it. We do not find this argument persuasive.

Section 42-365, R. S. Supp., 1976, provides that in awarding alimony or dividing property the trial court should consider the "circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the

children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." In determining what is appropriate in a particular case, the court may consider alimony and property rights together. Gottschalk v. Gottschalk, 197 Neb. 437, 249 N. W. 2d 502 (1977). This court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record, or unless good cause is shown. See, Abbott v. Abbott, 196 Neb. 97, 241 N. W. 2d 527 (1976); Schmer v. Schmer, 197 Neb. 800, 251 N. W. 2d 167 (1977); Mathias v. Mathias, 194 Neb. 598, 234 N. W. 2d 212 (1975).

The marriage in the present case was of a duration of about 25 years. Neither party brought any significant property to the marriage, and neither inherited nor was given property during the course of the marriage. During thirteen years of the marriage the petitioner was employed and contributed her income, and in the other years she served as a homemaker and cared for the children, interrupting her career to do so. Although it is true that the respondent was the party who made the investments which led to the accumulation of the marital estate, and that he worked diligently, it is apparent that the petitioner's contributions assisted him in this endeavor.

Although the evidence with respect to the value of the marital estate was conflicting, we do not believe that the trial court erred in concluding that the value was approximately $449,000. We have carefully reviewed the exhibits and testimony presented at trial, and find that they support the findings of the trial court. The petitioner was awarded $160,000 and the family residence, which had a value of approximately $40,000. Therefore her total award was $200,000, or approximately 45 percent of the marital

estate.  Petitioner received no alimony.  This award was well within the limits previously approved by this court.  See Mathias v. Mathias, *supra*.

We do not believe, under the circumstances of this case, the fact that respondent made the investments and worked industriously to accumulate a substantial marital estate, warrants a reduction of the award.  The contributions of the petitioner were significant, and are not minimized simply because her efforts were not directly involved with the accumulation of property.  She did contribute her income to the marriage for many years, and cooperated to live very frugally so that funds could be invested.  In a marriage relationship each spouse should ordinarily be entitled to share in the property the parties accumulate during the course of the marriage when both make contributions, monetary or otherwise. We conclude that the division of property in this case was reasonable.

The final issue in this case is whether the trial court erred by failing to award fair and reasonable attorney's fees to the petitioner.  The award granted by the District Court was $2,450.  The award of attorney's fees involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.  See, Barnes v. Barnes, 192 Neb. 295, 220 N. W. 2d 22 (1974); Fotinos v. Fotinos, 184 Neb. 486, 168 N. W. 2d 698 (1969); Junker v. Junker, 188 Neb. 555, 198 N. W. 2d 189 (1972); Holmes v. Holmes, 152 Neb. 556, 41 N. W. 2d 919 (1950).

The present case is obviously not an ordinary or typical divorce action in light of the issues raised by the foreign decree, the property settlement, and the

sizable marital estate involved. The record and petitioner's brief on appeal indicate that her counsel has devoted considerable time to the preparation and presentation of her case, and has demonstrated commendable skill in so doing. Under the circumstances of this case we believe that an award of $4,000 is appropriate for legal services rendered in connection with the proceedings in the District Court. We also make an additional award of $2,500 for services rendered by petitioner's attorney on appeal. Therefore we modify the award of attorney's fees made by the District Court to $4,000, and also award an additional $2,500 for services rendered on appeal. This total award of $6,500 is in line with awards in other cases. See, Shomaker v. Shomaker, 166 Neb. 164, 88 N. W. 2d 221 (1958); Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368 (1957).

As modified, the judgment of the District Court is affirmed.

AFFIRMED AS MODIFIED.