BONNIE LOU DOBESH, APPELLANT, V. CHARLES EDWARD DOBESH, APPELLEE.

342 N.W.2d 669

Filed January 13, 1984.   No. 83-478.

Gary G. Washburn of Stumpff & Washburn, for appellant.

Ronald Rosenberg of Rosenberg & Taute, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is a case involving the dissolution of a 35-year marriage. Appellant wife, Bonnie Lou Dobesh, sought a dissolution of the marriage and alimony from appellee husband, Charles Edward Dobesh. The parties were married in 1948. Two children were born to the marriage but were adults at the time of the decree herein.

During the marriage, the parties acquired more than 6,000 acres of land and were successful in a large cattle operation. The parties agree that this accumulation was the result of hard work by both.

Bonnie first filed for dissolution in November of

1980. At this time the parties' net worth was in excess of $1 million, but the ranching operation was beginning to experience financial difficulties stemming from a drop in cattle prices and escalating interest rates. The situation continued to deteriorate, until in late 1981 and early 1982 it became apparent that foreclosure actions by creditors would ensue unless the parties could get refinancing. The divorce action then pending was an impediment to any refinancing, and Charles requested Bonnie to dismiss that action. Two agreements were entered into between the parties in this connection—one to be effective in the event that refinancing was obtained, and one to be effective if refinancing could not be obtained. Both agreements provided generally for the disposition of the marital estate and for a minimum of $400 per month as alimony, with the further restriction that Bonnie could request more than $400 per month but Charles could not request less. These agreements were signed by both parties on February 11, 1982. On the same day, Bonnie dismissed her pending divorce action. Refinancing was not obtained, and the financial situation of the parties continued to deteriorate. In June 1982 Bonnie refiled for a dissolution of the marriage.

On August 26, 1982, two of the parties' major creditors entered into a "Trust Agreement" with the parties. Pursuant to this trust agreement, the parties transferred all their assets to a trustee, and, in return, the trustee paid off all unsecured creditors, released the parties from personal liability to the creditors, and agreed to give each of the parties $2,000 per month for 6 months. The agreement also allowed the parties additional time to attempt to find new financing.

No new financing was obtained, and on January 16, 1983, the property of the parties was sold by the trustee. Receipts from this sale were not sufficient to cover the parties' indebtedness, and neither party received any proceeds from the sale.

On May 24, 1983, trial was held on Bonnie's second dissolution petition. The trial court, by its decree, dissolved the marriage and decreed that Bonnie should receive $1 per year alimony until further order of the court.

There were no specific findings made by the trial court, but the necessary effect of the court's allowance of alimony in the amount of $1 per year was to refuse to accept the agreement of the parties as binding on the court.

Bonnie assigns two errors: (1) The failure of the trial court to find the agreement between the parties binding upon the parties; and (2) The abuse of discretion of the trial court in awarding only $1 per year as alimony.

With regard to the first assignment of error, it is clear that the agreement was a "written property settlement" within the intendment of Neb. Rev. Stat. § 42-366 (Cum. Supp. 1982). The agreement was entered into while one dissolution action was pending between the parties and, by its terms, was clearly written to control the disposition of the marital assets and alimony when the next dissolution action was filed. In that situation § 42-366(2) provides in part that "the terms of the agreement . . . shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the agreement is unconscionable."

The general law is settled. If the agreement between the parties is not unconscionable, the agreement binds both the parties and the court. See *Paxton v. Paxton*, 201 Neb. 545, 270 N.W.2d 900 (1978). If the agreement is unconscionable, it is not binding, and the court may make orders for the disposition of the property and maintenance. See *Weber v. Weber*, 200 Neb. 659, 265 N.W.2d 436 (1978).

With regard to the meaning of "unconscionable," we have interpreted that word to mean "manifestly unfair or inequitable." *Weber v. Weber, supra* at

668, 265 N.W.2d at 442. In considering that term and § 42-366, as applied to a property settlement agreement, we held in *Prochazka v. Prochazka*, 198 Neb. 525, 529, 253 N.W.2d 407, 409 (1977), that the question is whether the evidence shows "any circumstance, economic or otherwise, which operates to render the effect of the agreement unjust to either party or obviously excessive in respect to benefits or burdens on either side." See, also, *Weber v. Weber, supra.*

Viewed in that light, there can be little doubt that the agreement in this case was unconscionable. At the time of the decree herein, all of the parties' property, with the exceptions noted below, had been sold. Bonnie remained in possession of a 1979 Lincoln Continental with a value of $7,000. She had furniture valued at between $5,000 and $7,500, and approximately $12,000 in cash which she had saved from the payments made to her under the trust agreement. Her debts totaled some $600. She was working in a hospital at minimum wages, grossing approximately $700 per month, and incurring monthly expenses of $868.50.

Charles had some furniture, his clothing, and other assets totaling $1,850, and a $50,000 future interest in certain real estate which was subject to a life estate in his mother. His debts, most of which were incurred after the parties' separation, totaled over $48,000. He was working as a cattle manager in Kansas at a salary of approximately $22,000 annually for very long hours. His monthly expenses are $1,665, an amount greater than his monthly take-home salary.

In these circumstances we review the matter de novo, but give weight to the fact that the trial court observed the witnesses. *Barber v. Barber*, 207 Neb. 101, 296 N.W.2d 463 (1980). We find that the agreement between the parties is unconscionable insofar as it requires alimony payments of $400 per month.

We further find that, considering the economic circumstances of the parties, including specifically that

each is trying to rearrange his or her life after a serious financial comedown, the trial court did not abuse its discretion in awarding alimony of $1 annually until Bonnie dies or is remarried. Such an award was provided in *Jenks v. Jenks*, 200 Neb. 298, 263 N.W.2d 469 (1978), and it seems particularly applicable in a case such as this where the parties' finances are in such an unsettled state, with the possibility of further change.

The judgment of the trial court is affirmed.

AFFIRMED.